STATE of Indiana, et. al., Appellants–Defendants,

v.

Eugene YOUNG, et. al., Appellees–Plaintiffs.

No. 46A03–0512–CV–583.

Court of Appeals of Indiana.

Oct. 18, 2006.

Steve Carter, Attorney General of Indiana, Ryan D. Johanningsmeier, Deputy Attorney General, Indianapolis, IN; Attorneys for Appellants.

Eric M. Hylton, David E. Kress, Indianapolis, IN, Attorneys for Appellees.

## OPINION

BARNES, Judge.

### Case Summary [1]

The State of Indiana, et al., (collectively "the State") appeals the trial court's grant of summary judgment in favor of Eugene Young, et al., (collectively "the Teachers"), a group of teachers employed by the Department of Correction ("DOC"). We affirm in part, reverse in part, and remand.

1. We thank the parties for presenting oral argument in this case on September 6, 2006, in combination with the similar case of *Hig-*

### Issues

The State raises one issue, and the Teachers raise two issues on cross-appeal. Combined, reordered, and restated, the issues before us are:

I. whether the State's notice of appeal was filed within thirty days of a final judgment;

II. whether the trial court properly concluded that the DOC had to increase the Teachers' pay by four percent, but not an additional one percent.

### Facts

The Teachers are employed by the DOC at the Indiana State Prison and the Westville Correctional Facility. Both facilities are located in LaPorte County. Pursuant to statute, the Teachers' salaries must equal the "daily rate of pay" of teachers located in the largest school corporation in LaPorte County, as determined by that corporation's "salary schedule." *See* Ind. Code § 11–10–5–4(b). Michigan City Area Schools ("MCAS") is the largest school corporation in LaPorte County.

In 2000, MCAS and the local teachers' union negotiated a new "salary schedule" as an addendum to a 1995 collective bargaining agreement. The "salary schedule" is a grid that lists various salaries for teachers based on years of experience and educational attainment. Following the "salary schedule" on a separate page was a "Memorandum of Understanding," which stated:

The parties recognize teachers' need for the continued personal expenditure of funds on technology to support the instructional program of Michigan City Area Schools.

*gins v. State,* 855 N.E.2d 338 (Ind.Ct.App. 2006) which we also decide today.

Each teacher that completes at least one hundred twenty (120) schools days of service during the 1999–2000 school year shall be paid a one-time technology stipend of four percent (4%) of his/her base salary. Each teacher that completes at least sixty (60) schools days of service but less than one hundred twenty (120) school days of service during the 1999–2000 school year shall be paid a one-time technology stipend of two percent (2%) of his/her base salary.

App. p. 102. The MCAS board approved payment of this stipend, and the teachers employed by MCAS received this payment in one lump sum in May 2000.

Also attached to the "salary schedule" was another "Memorandum of Understanding" that stated:

The parties hereby agree that the additional state funding received because of the increase in student counts, commonly referred to as ADM, from the inclusion of students from Private Schools, for calendar years 2001 and 2002 shall not be available for bargaining; however, if the formula is funded as the parties expect, the Board will place not less than an additional one percent (1%) of each teacher's base salary into each teacher's 403(b) account.

*Id.* at 103. In January 2001, the conditions required to implement the one percent payment into MCAS teachers' 403(b) accounts[2] under this "Memorandum of Understanding" were satisfied, and MCAS began making the payments accordingly.

In 2000, the DOC calculated the salaries of the Teachers using the MCAS "salary schedule" as reflected in the 2000 addendum. However, it did not include the four percent stipend as part of the Teachers' salary or make any other arrangements to pay it to the Teachers. Additionally, the DOC's salary calculation did not take into consideration the additional one percent 403(b) contribution for MCAS teachers. The Teachers unsuccessfully sought to have the DOC recalculate their salaries to include the four percent stipend and the additional one percent 403(b) contribution. They then filed a complaint with the Indiana State Personnel Department ("ISPD"), which refused to overrule the DOC's decision. The Teachers took the next step of appealing the ISPD's determination to the State Employees' Appeals Commission ("SEAC"). A SEAC hearing officer granted summary judgment in favor of the DOC, finding it had correctly interpreted Indiana Code Section 11–10–5–4 and calculated the Teachers' salaries. The SEAC affirmed the hearing officer's determination.

On September 22, 2003, the Teachers filed an amended complaint and petition for judicial review against the State. In the prayer for relief, the Teachers requested either remand to the SEAC, or, alternatively, an order directing the DOC to include the stipend and 403(b) payments when calculating the Teachers' salaries and an "award [of] damages to make up for Defendant's failure to pay such benefits in the past. . . ." App. p. 116. The State moved for summary judgment; the Teachers responded and filed a cross-motion for summary judgment. On May 16, 2005, the trial court entered an order concluding that the DOC was required to pay the stipend, but not the 403(b) contribution, to the Teachers. This order did not specify the judicial relief to which the Teachers were entitled. On October 13, 2005, the trial court granted the State's motion to treat the May 16, 2005 order as a final appealable order. The State filed

---

2. This refers to section 403(b) of the Internal Revenue Code, which allows the creation of tax-deferred annuities for employees of educational institutions and certain non-profits.

its notice of appeal on November 7, 2005, challenging the trial court's determination regarding the technology stipend. The Teachers cross-appeal the trial court's determination regarding the 403(b) contribution.

## Analysis

### I. Timeliness of Appeal

 As an initial matter, the Teachers argue on cross-appeal that the trial court's May 16, 2005 order was a final appealable order and, therefore, the State's notice of appeal filed on November 7, 2005, exceeded the thirty-day time limit under Indiana Appellate Rule 9(A) for initiating an appeal. Appellate Rule 2(H) states that a judgment is "final" if:

(1) it disposes of all claims as to all parties;

(2) the trial court in writing expressly determines under Trial Rule 54(B) or Trial Rule 56(C) that there is no just reason for delay and in writing expressly directs the entry of judgment (i) under Trial Rule 54(B) as to fewer than all the claims or parties, or (ii) under Trial Rule 56(C) as to fewer than all the issues, claims or parties;

(3) it is deemed final under Trial Rule 60(C);

(4) it is a ruling on either a mandatory or permissive Motion to Correct Error which was timely filed under Trial Rule 59 or Criminal Rule 16; or

(5) it is otherwise deemed final by law.

A final judgment disposes of all issues as to all parties, thereby ending the particular case and leaving nothing for future determination. *Georgos v. Jackson,* 790 N.E.2d 448, 451 (Ind.2003). "A disposition of all claims requires more than the entry of a ruling on a motion without entry of judgment.... A judgment that fails to determine damages is not final." *Id.* at 452.

Here, the concluding paragraph of the trial court's May 16, 2005 order stated:

As a matter of law, pursuant to Ind. Code § 11–10–5–4, the Court hereby finds that the Plaintiffs are entitled to be paid the 4% technology stipend by the Defendants as provided for in the Michigan City Area Schools' collective bargaining agreement. However, the Court finds that the Plaintiffs are not entitled to be paid the 1% 403(b) contribution since such payment is in the form of a retirement benefit.

App. pp. 313–14. This conclusion leaves much for future determination. It does not state whether the case should be remanded to the SEAC, ISPD, or DOC for further proceedings. It also does not contain any indication whether the Teachers are owed back pay and what the amount of damages for improperly withheld back pay would be and whether the trial court or one of the agencies below would be responsible for making that determination. In sum, the order contains no remedy to the Teachers. As such, it cannot be considered a final judgment. *See Georgos,* 790 N.E.2d at 452.

 By contrast, the trial court's order of October 13, 2005, contains the "magic language" of Indiana Trial Rule 54(B) for making a non-final order final by stating that there is no just reason for delay and that the May 16, 2005 order be entered as a final judgment as to the issues addressed in that order. *See id.* The State had thirty days from October 13, 2005 to timely initiate its appeal. It did so, and this appeal is properly before us.

### II. DOC's Determination Regarding the Teachers' Salaries

 The primary issue in this case, and the one that parallels the *Higgins* case, is whether the DOC properly calculated the

Teachers' salaries. We review a summary judgment ruling by using the same standard as the trial court: summary judgment is appropriate only where the evidence shows there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Ind. Trial Rule 56(C); *Fraternal Order of Police, Lodge No.73 v. City of Evansville,* 829 N.E.2d 494, 496 (Ind.2005). All facts and reasonable inferences drawn from those facts are construed in favor of the non-moving party. *Fraternal Order of Police,* 829 N.E.2d at 496. The review of a summary judgment motion is limited to those materials designated to the trial court. *Id.* There do not appear to be any genuinely disputed issues of material fact in this case; the question presented here essentially is the proper construction of a statute and its application to the undisputed facts of this case.

Under Indiana Code Section 4–21.5–5–14(a), "[t]he burden of demonstrating the invalidity of agency action is on the party ... asserting invalidity." Additionally, a court may invalidate agency action:

only if it determines that a person seeking judicial relief has been prejudiced by an agency action that is:

(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(2) contrary to constitutional right, power, privilege, or immunity;

(3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

(4) without observance of procedure required by law; or

(5) unsupported by substantial evidence.

I.C. § 4–21.5–5–14(d).

The statute at issue here is Indiana Code Section 11–10–5–4, which provides in part:

(a) All teachers employed by the [DOC] are subject to all provisions of law concerning the minimum salary of teachers and membership in any teachers' retirement fund plan. The commissioner or the commissioner's designated representative shall annually determine the salary schedule of the largest school corporation of the county in which each correctional institution is located.

(b) Except as provided in subsections (e) through (f), from the information described in subsection (a), the commissioner shall prescribe, subject to approval by the state personnel department and the budget agency, a salary schedule for each correctional institution, using a daily rate of pay for each teacher, which must be equal to that of the largest school corporation in the county in which the correctional institution is located.

The goal in statutory construction and interpretation is to determine, give effect to, and implement the intent of the legislature. *Shaffer v. State,* 795 N.E.2d 1072, 1076 (Ind.Ct.App.2003). Here, three different state agencies—the DOC, ISPD, and SEAC—all interpreted this statute as not requiring the DOC to include the four percent stipend paid to MCAS teachers when calculating the Teachers' salaries. The trial court disagreed with this interpretation. The parties here debate the amount of deference the trial court, and this court, were and are required to extend to the determination of those agencies. The Teachers argue, and the trial court held, that "no deference" should be accorded. App. p. 313. The State argues that the agencies' interpretation of the statute "is entitled to great weight." Appellant's Br. p. 6.

The Teachers cite a recent case from our supreme court in which it was asked to evaluate a state agency's interpretation of

a statute. The court stated, "the law is clear that '[t]he interpretation of a statute . . . is not a question of fact, but one of law reserved for the courts.' " *Horseman v. Keller*, 841 N.E.2d 164, 168 (Ind.2006) (quoting *Joseph v. Lake Ridge Sch. Corp.*, 580 N.E.2d 316, 319 (Ind.Ct.App.1991), *trans. denied* (emphasis added in *Horseman*)). The *Horseman* opinion also stated that if it had been necessary to interpret the statute at issue, "it would be the clear province of the courts to evaluate it on appeal." *Id.*

Ultimately, however, the court concluded that it was not necessary to interpret the statute at issue because other statutes answered the question before the court. *See id.* To the extent the language above from *Horseman* might be read as suggesting that no deference should be accorded to an agency's interpretation of a statute, we believe that statement was dicta; the court found it unnecessary to evaluate whether the agency's interpretation of a statute was correct. Additionally, such a suggestion would run directly contrary to established precedent found in multiple cases from our supreme court and this court. The court in *Horseman* gave no indication that it intended to overrule this line of cases.

When our supreme court has had to directly decide the question of the correctness of an agency's interpretation of a statute, it has held, "the interpretation of a statute by the administrative agency charged with its enforcement is entitled to great weight." *Natural Res. Comm'n of Indiana Dep't of Natural Res. v. Porter County Drainage Bd.*, 576 N.E.2d 587, 589 (Ind.1991). This holding is reflected in many other cases. *See, e.g., LTV Steel Co. v. Griffin*, 730 N.E.2d 1251, 1257 (Ind. 2000); *Indiana Wholesale Wine & Liquor Co. v. State ex rel. Indiana Alcoholic Beverage Comm'n*, 695 N.E.2d 99, 105 (Ind.

1998); *Sullivan v. Day*, 681 N.E.2d 713, 716 (Ind.1997); *Shaffer*, 795 N.E.2d at 1076; *State Employees' Appeals Comm'n v. Barclay*, 695 N.E.2d 957, 959–60 (Ind. Ct.App.1998) (deferring to SEAC's interpretation of Indiana Code Section 11–10–5–4), *trans. denied.*

 Deference to an agency's interpretation of a statute becomes a consideration when a statute is ambiguous and susceptible of more than one reasonable interpretation. *See Shaffer*, 795 N.E.2d at 1076. "When a court is faced with two reasonable interpretations of a statute, one of which is supplied by an administrative agency charged with enforcing the statute, the court should defer to the agency." *Id.* (citing *Sullivan*, 681 N.E.2d at 716). If a court determines that an agency's interpretation is reasonable, it should terminate its analysis and not address the reasonableness of the other party's proposed interpretation. *Id.* "Terminating the analysis recognizes 'the general policies of acknowledging the expertise of agencies empowered to interpret and enforce statutes and increasing public reliance on agency interpretations.' " *Id.* at 1077 (quoting *Indiana Wholesale Wine & Liquor*, 695 N.E.2d at 105).

 We will accord deference to the agencies' interpretation of Indiana Code Section 11–10–5–4, unless such interpretation is inconsistent with the statute itself. *See LTV Steel*, 730 N.E.2d at 1257. If the agencies' interpretation is reasonable, we terminate our analysis and accept that interpretation as correct without addressing the Plaintiffs' proposed counter-interpretation. *See Shaffer*, 795 N.E.2d at 1076–77. The DOC, in particular, is the agency charged with day-to-day adherence to this statute in determining the pay of teachers within its employ. The ISPD and SEAC, in turn, are agencies charged more generally with enforcing statutes governing

state employees' terms of employment. *See, e.g.,* I.C. § 4–15–2–35. Courts should be reluctant to overturn the considered, and identical, interpretation of a statute by three different agencies charged with enforcing the statute. By contrast, we owe no deference to the trial court's interpretation of the statute. *See Pabey v. Pastrick,* 816 N.E.2d 1138, 1148 (Ind.2004).

The reasoning of the agencies regarding their interpretation of Indiana Code Section 11–10–5–4 is found in the following paragraph from the SEAC hearing officer's ruling on the Teachers' complaint:

When the legislature used the term "salary schedule" it was undoubtedly aware of the practice of school systems setting salary schedules which are based upon the education and experience of the teacher. Thus when the legislature requires a review of the "salary schedule" in Ind.Code 11–10–5–4, it means the salary schedule as expressed in Section 20 of the contract. Had the legislature intended a different result it could have required [DOC] to determine the actual salaries paid to public school teachers in the relevant system and base the daily rate upon that calculation. Instead, the legislature instructed [DOC] to review the "salary schedule" which [DOC] did in this instance.

App. p. 285. We conclude this is a reasonable interpretation of the statute.

"We must assume that the language employed in a statute was used intentionally." *Pabey,* 816 N.E.2d at 1148. The legislature did not say that the DOC is required to calculate its teachers' pay based on the

"salary" paid to teachers in the largest local school corporation. Instead, it used the specific term "salary schedule." This is a term of art with respect to how teachers' pay is calculated, and one that was specifically used in the collective bargaining agreement governing the pay of MCAS teachers. The "salary schedule" is a grid that calculates teachers' pay based strictly on years of experience and educational attainment, i.e. type of degree earned and hours accumulated towards any more advanced degree. This reflects the statutory basis for calculating minimum teacher pay, which requires computation of salary "based on the teacher's education, experience, and degree completed as of the teacher's first day of service." I.C. § 20–28–9–1. The "salary schedule" here fulfills this requirement.

The technology stipend, by contrast, is not tied directly to a teacher's experience level and educational attainment. The express purpose of the stipend is to reimburse MCAS teachers for out-of-pocket expenses they incur "to support the instructional program" of MCAS. App. p. 102. There is no designated evidence in the record that DOC teachers incur similar expenses. There also is no evidence as to why, if the stipend was really intended to represent an across-the-board four percent raise to MCAS teachers and MCAS had the money available to pay the stipend, such figure was not simply reflected in the salary schedule.[3]

Furthermore, Indiana Code Section 11–10–5–4(b) requires the DOC to calculate its

---

**3.** MCAS contributed a percentage of the stipend amount to the Indiana Teacher Retirement Fund, so the reason for structuring the stipend as separate from the salary schedule would not have been to avoid such payment. It also is unclear from the record whether MCAS teachers continue to receive an annual four percent technology stipend payment. At the time of the litigation below, it appears the 2000 salary schedule was still in effect because MCAS and the union had not yet reached a new collective bargaining agreement. The technology stipend, however, expressly states that it was a one-time payment for the 1999–2000 school year.

teachers' pay based on the comparable "daily rate of pay" of the largest local school corporation. The stipend here, however, was paid in a one-time lump sum to teachers and only if they worked a certain number of days during the year. It was not an amount that was automatically included in teachers' regular paycheck to reflect their "daily rate of pay." Most importantly, perhaps, is the simple fact that the technology stipend as negotiated by MCAS teachers does not appear on the clearly denominated "salary schedule" of the collective bargaining agreement. It is listed in an addendum outside of the "salary schedule."

■ The State claims the additional one percent contribution to MCAS teachers' 403(b) retirement plans also was not part of the 2000 "salary schedule" for the same reasons applicable to the technology stipend. The designated evidence established that MCAS teachers are not automatically enrolled in a 403(b) account, and they are not fully vested in any such plan until five years have passed after enrollment. The State notes that not all MCAS teachers necessarily receive this additional one percent payment, because they must affirmatively enroll in a 403(b) account, and not all who enroll will necessarily ever receive the payment because they may terminate employment before being fully vested. As with the technology stipend, however, the clearly dispositive reason for not requiring the DOC to make this additional payment to the Teachers is that the additional 403(b) contribution was placed outside of the collective bargaining agreement's salary schedule.

In light of this, we conclude it is inappropriate to examine cases or other sources that have defined "salary" or "wage" in different contexts, such as the Wage Payment statute.[4] Whether the four percent stipend and additional 403(b) contribution constitute "salary" is not the issue here; the issue is whether they are part of the MCAS "salary schedule." They are not. Likewise, it is irrelevant whether the four percent stipend or additional 403(b) contribution were considered "salary" from the perspective of MCAS teachers who negotiated for and received it or from the standpoint of the MCAS budget. We must assume the legislature chose the term "salary schedule" on purpose when it drafted Section 11–10–5–4. We cannot and should not disregard that choice.

In sum, the conclusion of the DOC, ISPD, and SEAC that Indiana Code Section 11–10–5–4 did not require consideration of the technology stipend or additional one percent 403(b) contribution provided to MCAS teachers when calculating the Teachers' salaries is reasonable. We will not address the reasonableness of the Teachers' proposed counter-interpretation of that statute, which essentially would require the DOC to consider not only the "salary schedule" of teachers in the largest local school corporation but other forms of compensation and/or benefits provided to those teachers not expressly included in the "salary schedule." The legislature may decide as a matter of sound public policy that the total compensation of DOC teachers should match the total compensation paid to teachers in the largest local

4. *See, e.g., Wank v. Saint Francis College,* 740 N.E.2d 908, 912 (Ind.Ct.App.2000), *trans. denied.* In any event, the Teachers' argument requires us to make two departures from the plain language of the statute: that we should disregard the term "salary schedule" and focus on only the word "salary," and that we should equate the word "salary" with the word "wage," and rely on cases interpreting the word "wage." We decline to make the first leap and, therefore, need not address whether "salary" can in fact be considered the equivalent of "wage."

school corporation, taking into consideration the "salary schedule" and any other forms of income provided by the school corporation. That, however, is a legislative decision. As the statute is currently written, the DOC only has to match the relevant corporation's "salary schedule." It is reasonable to conclude that the DOC did so with respect to the Teachers' salaries.

### Conclusion

The trial court erred in concluding the DOC was required to consider the technology stipend when calculating the Teachers' salaries but correctly concluded the DOC was not required to consider the additional 403(b) contribution. We reverse with respect to the technology stipend issue, affirm with respect to the 403(b) contribution issue, and remand for further proceedings consistent with this opinion.

Affirmed in part, reversed in part, and remanded.

FRIEDLANDER, J., and MATHIAS, J., concur.