**Mary Beth HIGGINS, et al., Appellants–Plaintiffs,**

**v.**

**STATE of Indiana, Indiana State Department of Health, Indiana Soldiers' and Sailors' Children's Home, Indiana State Personnel Department, State Employees' Appeals Commission, Appellees–Defendants.**

No. 70A01–0508–CV–369.

Court of Appeals of Indiana.

Oct. 18, 2006.

Eric M. Hylton, James B. Chapman, II, Dann Pecar Newman & Kleiman, P.C., Indianapolis, IN, Attorneys for Appellants.

Steve Carter, Attorney General of Indiana, Janet L. Parsanko, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellees.

## OPINION

FRIEDLANDER, Judge. ·

The appellants (the Teachers) are teachers at the Indiana Soldiers' and Sailors' Children's Home (the Children's Home). In this appeal,[1] the Teachers challenge the grant of summary judgment in favor of the State of Indiana, representing an unsuc-

cessful conclusion to an attempt to collect what the Teachers claim is pay to which they are entitled under Ind.Code Ann. § 16–19–6–7 (West, PREMISE through 2006 Public Laws approved and effective through March 15, 2006). The Teachers present the following restated issues on appeal:

1.  What is the appropriate standard of review for decisions of the Indiana State Employees Appeal Commission (SEAC)?

2.  Does I.C. § 16–19–6–7 require the State to make contributions to the Teachers' retirement accounts under the collective bargaining agreement between the Rush County School Corporation and the Rush United Teachers Association?

We reverse and remand.

The undisputed facts are that the Teachers are licensed institutional teachers who work as employees of the State of Indiana's Department of Health. Like teachers at other state institutions, their salaries are set by local standards, as provided in I.C. § 16–19–6–7. That statute, which is the focus of this appeal, states:

(a) The state health commissioner shall annually review the salary schedules of the largest school corporation of the county in which each special institution placed under the control of the administrative unit is located to determine the salary schedule of that school corporation.

(b) Except as provided in subsection (e), the state health commissioner shall, following the annual review in subsection (a), prescribe, subject to approval by the state personnel department and

---

1.  Joint oral argument was conducted in the instant case and a companion case in Indianapolis on Wednesday, September 6, 2006. Although decided in separate opinions, the instant case and the aforementioned companion case, i.e., *State, et al. v. Young, et al.,* also share the same handdown date.

the budget agency, a salary schedule for each special institution described in subsection (a), using a daily rate of pay for each teacher, which must be equal to that of the largest school corporation in the county in which the institution is located.

(c) The state health commissioner shall prescribe the terms of the annual contract awarded to licensed teachers qualifying for payment under this schedule.

(d) The state health commissioner shall advise the budget agency and the governor of the state health commissioner's action under this section. Hours of work for all teachers shall be set in accordance with IC 4–15–2.

(e) If the school corporation in which the special institution is located becomes the largest school corporation in the county in which the special institution is located, the daily rate of pay for each teacher must be equal to that of the school corporation in which the special institution is located, without regard to whether the school corporation in which the special institution is located remains the largest school corporation in the county.

The Children's Home is located in Rush County, and the Rush County School Corporation (the School Corporation) is the largest school corporation in the county. Thus, pursuant to I.C. § 16–19–6–7, the pay received by the School Corporation's teachers provides the benchmark for determining the salaries for teachers at the Children's Home.

In 1999, the School Corporation and the Rushville United Teacher's Association (the Union) were negotiating the terms of a collective bargaining agreement (the CBA). The School Corporation informed the Union it held money that it would give to the teachers to use in whatever way the Union chose. The Union suggested that the School Corporation use the funds to create a 401 annuity (or its equivalent) with a matching plan. The School Corporation incorporated that proposal into the CBA and established a retirement account into which it contributed an agreed-upon percentage of each teacher's salary. For purposes of illustration, the following is a portion of the CBA's pay schedule, and is representative of the terms of the School Corporation's teachers' compensation package:

| Years Exp. | Contract Amount | ISTRF | 403 | Total with ISTRF |
|---|---|---|---|---|
| 0 | 26724.96 | 805.78 | 134.30 | 27665.03 |
| 1 | 27385.67 | 825.70 | 137.62 | 28348.99 |
| 2 | 28064.43 | 846.16 | 141.03 | 29051.63 |

*Appellant's Appendix* at 490. In the above table, the "Contract Amount" represents the teacher's base salary, the "ISTRF" represents the three percent contributed in this case by the School Corporation into the teacher's retirement fund, and "403" represents the contribution into an annuity for the teacher (henceforth, "the 403 contribution"). The "total" is, of course, the sum of the other three figures added together. The State agreed to pay the "contract amount" and the "ISTRF" amount, but refused to pay to the Teachers the amount listed in the "403" column.

On August 21, 2000, the teachers individually filed merit employee complaints with the Indiana State Personnel Department alleging that, pursuant to I.C. § 16–19–6–7, they were entitled to the 403 contribution because the School Corporation contributed such for its teachers. The Indiana State Personnel Department denied their complaints and in January 2001, the Teachers appealed to SEAC. On July 13, 2001, the State filed a motion for summary judgment and on August 17, 2001, the Teachers filed a cross-motion for summary judgment. Both motions centered

upon the Teachers' right to the 403 contribution. On December 6, 2001, SEAC's hearing officer denied the Teachers' motion and granted the State's motion. On December 14, 2001, the Teachers filed objections to the hearing officer's ruling. SEAC affirmed the ruling on January 22, 2004. On February 22, 2004, the Teachers filed an amended complaint for judicial review in Rush Superior Court. On September 1, 2004, the State filed a motion for summary judgment, and the Teachers responded on October 27, 2004, with a cross-motion for summary judgment. Those motions, like the ones filed earlier with SEAC, argued opposite sides of the issue of whether the Teachers were entitled, under I.C. § 16–19–6–7, to the 403 contribution. On July 20, 2005, the trial court granted the State's motion for summary judgment and denied the Teachers' motion, thereby affirming SEAC's amended order of January 22, 2004. The Teachers appeal that ruling.

### 1.

The scope of our review in this case was briefed by the parties and was the subject of thorough discussion at oral argument. Citing *LTV Steel Co. v. Griffin*, 730 N.E.2d 1251 (Ind.2000) and *Indiana Wholesale Wine & Liquor Co., Inc. v. State ex rel. Indiana Alcohol Beverage Comm'n*, 695 N.E.2d 99 (Ind.1998), the State contends our scope of review is quite limited, and we must grant considerable deference to SEAC's ruling. The Teachers counter that this appeal involves the construction of a statute, which is a pure question of law and should be reviewed de novo.

■ The scope of judicial review of an administrative decision is addressed in Ind.Code Ann. § 4–21.5–5–14 (West, PREMISE through 2006 Public Laws approved and effective through March 15, 2006), which states:

(a) The burden of demonstrating the invalidity of agency action is on the party to the judicial review proceeding asserting invalidity.

(b) The validity of agency action shall be determined in accordance with the standards of review provided in this section, as applied to the agency action at the time it was taken.

(c) The court shall make findings of fact on each material issue on which the court's decision is based.

(d) The court shall grant relief under section 15 of this chapter only if it determines that a person seeking judicial relief has been prejudiced by an agency action that is:

(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(2) contrary to constitutional right, power, privilege, or immunity;

(3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

(4) without observance of procedure required by law; or

(5) unsupported by substantial evidence.

The foregoing settles all matters concerning the standard of review in this case, save one: to what extent must we defer to SEAC's ruling?

■ Both parties agree that the question in this case is a matter of statutory construction. Generally, statutory interpretation is a question of law and determinations in that regard are subject to de novo appellate review. *See Vanderburgh County Election Bd. v. Vanderburgh County Democratic Cent. Comm.*, 833 N.E.2d 508 (Ind.Ct.App.2005). The State notes, however, "the interpretation chosen by the administrative agency charged with the duty of enforcing the ordinance is entitled to great weight[.]" *Hoosier Outdoor*

*Adver. Corp. v. RBL Mgmt., Inc.*, 844 N.E.2d 157, 163 (Ind.Ct.App.2006). This is true so long as the agency's interpretation is reasonable. *See Shaffer v. State*, 795 N.E.2d 1072 (Ind.Ct.App.2003). Where it is unreasonable, or where it is inconsistent with the statute itself, *see LTV Steel Co. v. Griffin*, 730 N.E.2d 1251 (Ind.2000), we will, of course, accord it no deference. In this case, SEAC's interpretation is not only unreasonable, but also inconsistent with its interpretation of a substantially similar provision in a companion case handed down today by this court. *See State, et al. v. Young, et al.*, No. 46A03–0512–CV–583, 855 N.E.2d 329, 336, 2006 WL 2959466, at *6 (Ind.Ct.App. 2006) (construing a similar challenge under Ind.Code Ann. § 11–10–5–4 (West, PREMISE through 2006 Public Laws approved and effective through March 15, 2006)) (noting a paragraph from the SEAC decision on the teachers' complaint to the effect that when the legislature used the phrase "salary schedule," "it was undoubtedly aware of the practice of school systems setting salary schedules which are based upon the education and experience of the teacher ... [,][t]hus when the legislature requires a review of the 'salary schedule' in Ind.Code § 11–10–5–4, it means the salary schedule" as contained in the local teachers' contract). Because we have determined that SEAC's interpretation of I.C. § 16–19–6–7 is unreasonable, we review the trial court's determination de novo. *Vanderburgh County Election Bd. v. Vanderburgh County Democratic Cent. Comm.*, 833 N.E.2d 508.

### 2.

■ At oral argument the parties focused upon the significance of the term "schedule" or "schedules", as used in I.C. § 16–19–6–7(a)–(c). The State acknowledges the School Corporation's teachers' standard contract included a salary schedule with a column representing the 403 contribution. The State contends, however, such is irrelevant to the issue before us. According to the State, the important language in I.C. § 16–19–6–7 is not "salary schedule," but instead is to be found in subsection (b), describing the method or formula to be used in calculating the Teachers' pay. That language is, "using a daily rate of pay for each teacher." According to this argument, the salary schedule of the School Corporation's teachers should be consulted only to ascertain the Teachers' daily rate of pay. This is important, according to the State, because teachers at the Children's Home teach many more days per year than do teachers employed by the School Corporation. Were the Teachers paid precisely the same amount as the School Corporation's teachers, the former would be earning significantly less per day. Although we understand the State's argument, we find the Teachers' argument on the correct use of the baseline salary schedule more persuasive.

■ According to I.C. § 16–19–6–7(a), the Teachers' salaries at the Children's Home are to be determined by using "the salary schedules" of the School Corporation as a template for setting "the salary schedule" appropriate for the Teachers. It is significant to us that the statute specifies several times that the Teachers' pay is to take the form of a "salary schedule" whose terms must track the "salary schedule" of the School Corporations' teachers. In this context, we must consider "salary schedule" to be a term of art. A "term of art" is "[a] word or phrase having a specific, precise meaning in a given specialty, apart from its general meaning in ordinary contexts." *Black's Law Dictionary* 1482 (7th ed.1999). "Evidence of industry practice is admissible to construe terms of art."

*Allstate Ins. Co. v. Dana Corp.*, 759 N.E.2d 1049, 1059 (Ind.2001).

Both parties acknowledged at oral argument that "salary schedule" in this context refers to a chart that is physically attached to a standard teacher contract. That chart typically consists of columns listing the individual components that make up a teacher's total compensation package and rows reflecting the specific dollar amounts assigned to each component under that particular contract. We construe I.C. § 16–19–6–7 to require that the salary schedule for teachers at state institutions mirror the salary schedule of the local teachers' contract that serves as the baseline, in that the former must contain the same components as the latter. The "using a daily rate of pay for each teacher" language in subsection (b) that comprises the basis of the State's argument merely directs the State to adjust the specific amounts paid in each category on the institutional teachers' salary schedule to reflect the difference in the number of days worked by those teachers, as compared to those in the relevant county school district.

Applying these principles to the instant case, the 2000–2001 salary schedule for teachers in the School Corporation contained a column designated "403" that represents the employer's contribution to a retirement annuity. Accordingly, the salary schedule—and thus the compensation package—for the Teachers must contain the same item, with the amount adjusted to reflect the difference in the numbers of days the respective groups teach. In this case, the amount will be adjusted upward by approximately thirty-three percent, as the Teachers work approximately 240 days per year, while teachers for the School Corporation work approximately 180 days per year.

In summary, we conclude that in passing I.C. § 16–19–6–7, the Legislature intended that teachers at state institutions should be paid a salary that is equivalent to that earned by teachers at the largest school district in the county in which the institution is located. In this context, "equivalent" means the institutional teachers' salary would share the same structure, component by component, as is reflected in the county teachers' salary schedule, and the same daily rate of pay, with the only adjustments being the difference in the number of days worked by the two groups. Accordingly, the trial court erred in ruling to the opposite effect in granting the State's motion for summary judgment and denying the Teachers' motion, thereby affirming SEAC's amended order of January 22, 2004. This cause is remanded with instructions to vacate the order granting the State's motion, and to enter an order granting the Teachers' motion for summary judgment.

Judgment reversed and remanded.

BARNES, J., and MATHIAS, J., concur.