Attorneys for Appellants

Geoffrey M. Grodner
Kendra G. Gjerdingen
Mallor Grodner LLP
Bloomington, Indiana

Attorneys for Appellees

Gregory F. Zoeller
Attorney General of Indiana

Kyle Hunter
Deputy Attorney General
Indianapolis, Indiana

John C. Trimble
Brett Y. Hoy
Lewis Wagner, LLP
Indianapolis, Indiana

Steven A. McKelvey, Jr.
Nelson Mullins Riley & Scarborough LLP
Columbia, South Carolina

**FILED**
Aug 13 2015, 9:59 am
CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

Andy Mohr West, Inc. d/b/a Andy Mohr Toyota, Butler Motors, Inc. d/b/a Butler Toyota, and TW Toy, Inc. d/b/a Tom Wood Toyota,

*Appellants-Petitioners,*

v.

Office of the Indiana Secretary of State, Auto Dealer Services Division, and Carol Mihalik, in

August 13, 2015

Court of Appeals Case No. 49A02-1411-PL-812

Appeal from the Marion Superior Court

The Honorable Cynthia J. Ayers, Judge

Cause No. 49D04-1403-PL-9960

her representative capacity as
Securities Commissioner of the
Auto Dealer Services Division,
and Toyota Motor Sales, U.S.A.,
Inc.,

*Appellees-Respondents.*

**Najam, Judge.**

# Statement of the Case

Andy Mohr West, Inc. d/b/a Andy Mohr Toyota (Andy Mohr), Butler Motors, Inc. d/b/a Butler Toyota (Butler), and TW Toy, Inc. d/b/a Tom Wood Toyota (Tom Wood) (collectively, the Dealers) appeal the trial court's judgment affirming the dismissal of declaratory judgment actions the Dealers had filed with the Auto Dealer Services Division of the Office of the Secretary of State (the Division). According to the Dealers' filings with the Division, Toyota Motor Sales, U.S.A., Inc. (Toyota) proposed to relocate Ed Martin Toyota (Ed Martin) from Anderson, Indiana, to Fishers, Indiana, which the Dealers alleged was without good cause. The Division dismissed the Dealers' claims after it interpreted recently enacted provisions of the Indiana Code to deny the Dealers standing. This appeal presents a question of first impression regarding an interpretation of the Indiana Dealer Services statutes. *See* Ind. Code §§ 9-32.

As the Supreme Court of the United States has reminded us, "[a] fair reading of legislation demands a fair understanding of the legislative plan." *King v. Burwell*, ___ U.S. ___, 2015 WL 2473449 at *15 (June 25, 2015). Here, the legislative plan as it relates to the proposed relocation of a new-motor-vehicle (NMV) dealer into a new market evinces our legislature's intent that the Division review the effects of the proposed relocation on the marketplace before the relocation may be approved. We conclude, however, that the Division's interpretation of the relevant statutes is inconsistent with the economic rationale of the legislative plan and is not, therefore, a reasonably correct interpretation of the statutes. Instead, the Division has misconstrued the relevant statutes to deny the Dealers standing and potential remedies. In its interpretation, the Division has either disregarded or overlooked the plain text of relevant statutory provisions and, in so doing, has rendered those provisions meaningless. We reverse the trial court's judgment and remand to the Division for further proceedings on the Dealers' claims against Toyota.

## Facts and Procedural History

The facts underlying this appeal are not in dispute. Ed Martin is an NMV dealer and has been operating out of Anderson in Madison County for a number of years. Ed Martin is licensed in Indiana to serve as a Toyota dealer. Around September 27, 2013, Toyota informed each of the Dealers, which are also NMV dealers, that it intended to relocate Ed Martin from Anderson to

Fishers. Fishers is located in Hamilton County, which has a population in excess of 100,000 people.

[4] The Dealers engaged Toyota in negotiations to avoid the relocation of Ed Martin, but those discussions eventually broke down. As such, on December 23, 2013, Butler filed with the Division its protest against the relocation of Ed Martin and its request for declaratory judgment. Tom Wood and Andy Mohr filed similar requests shortly thereafter. Collectively, the Dealers' requests sought to have the Division determine whether good cause existed for the proposed move of Ed Martin. Subsequently, Toyota moved to dismiss the Dealers' requests on the ground that the Dealers each lacked standing to file their requests with the Division.

[5] On February 25, 2014, the Division entered Findings of Fact, Conclusions of Law, Judgment, and Final Order with respect to each of the Dealers. The Division determined that the relevant market area that would apply to Ed Martin's relocated dealership consisted of a six-mile radius around that proposed location[1] pursuant to Indiana Code Section 9-32-2-20(1). Because

---

[1] In its filings with the Division, Toyota acknowledged that "no specific relocation site [for Ed Martin] has been chosen at this time." Appellant's App. at 153 n.4. Rather, Toyota's arguments, and the Division's conclusions, were premised on the theory that the relocated Ed Martin dealership would be no closer than six miles to any of the Dealers. *See id.* ("Toyota stipulates that[,] if the ultimate relocation site were located within 6 miles" of one of the Dealers, that Dealer "would have the right to receive notice [of] and . . . protest . . . the relocation."); *see also id.* at 44 (Division's conclusions with respect to Tom Wood), 70 (Division's conclusions with respect to Andy Mohr), and 94 (Division's conclusions with respect to Butler).

each of the Dealers was located outside of that radius, the Division concluded that each Dealer lacked standing to file its declaratory judgment action. The Dealers petitioned the trial court for judicial review of the Division's judgment, and, after consolidating the Dealers' petitions, the court affirmed the Division's judgment. This appeal ensued.

# Discussion and Decision

## *Standard of Review*

[6] This appeal involves a question of an agency's interpretation of the Indiana Code. As we have explained:

> "An interpretation of a statute by an administrative agency charged with the duty of enforcing the statute is entitled to great weight, *unless this interpretation would be inconsistent with the statute itself.*" *LTV Steel Co. v. Griffin*, 730 N.E.2d 1251, 1257 (Ind. 2000). . . . "Deference to an agency's interpretation of a statute becomes a consideration when a statute is ambiguous and susceptible of more than one reasonable interpretation." *State v. Young*, 855 N.E.2d 329, 335 (Ind. Ct. App. 2006). When a court is faced with two reasonable interpretations of a statute, one of which is supplied by an administrative agency charged with enforcing the statute, the court should defer to the agency. *Id.* If a court determines that an agency's interpretation is reasonable,

---

In light of Toyota's express uncertainty with respect to the exact site of Ed Martin's relocation, we decline to

accept the Division's and Toyota's suggestions that we should hold, in the first instance under the correct interpretation of the relevant statutes, that any one of the Dealers lacks standing with respect to the hypothetical location of the relocated Ed Martin dealership.

it should terminate its analysis and not address the
reasonableness of the other party's proposed interpretation.
*Id. . . . However, an agency's incorrect interpretation of a statute is
entitled to no weight.* Peabody Coal Co. v. Ind. Dep't of Natural Res.,
606 N.E.2d 1306, 1308 (Ind. Ct. App. 1992). *If an agency
misconstrues a statute, there is no reasonable basis for the agency's
ultimate action* and the trial court is required to reverse the
agency's action as being arbitrary and capricious. *Id.*

*Pierce v. Dep't of Corr.*, 885 N.E.2d 77, 89 (Ind. Ct. App. 2008) (emphases
added). Further, insofar as this appeal is from the judgment of a trial court,
"[i]t is well established that, where 'only a paper record has been presented to
the trial court, we are in as good a position as the trial court . . . and will
employ de novo review . . . .'" *Norris Ave. Prof'l Bldg. P'ship v. Coordinated
Health, LLC*, 28 N.E.3d 296, 298 (Ind. Ct. App. 2015) (quoting *Munster v. Groce*,
829 N.E.2d 52, 57 (Ind. Ct. App. 2005)) (omissions original to *Norris*), *trans.
denied*.

[7] The only issue on appeal is whether the agency's interpretation of the relevant
statutes is reasonably correct. The Indiana Supreme Court has long recognized
the "basic principle" that

the foremost objective of the rules of statutory construction is to
determine and effect the true intent of the legislature. It is also
well settled that the legislative intent as ascertained from an Act
as a whole will prevail over the strict literal meaning of any word
or term used therein. When the court is called upon to construe
words in a single section of a statute, it must construe them with
due regard for all other sections of the act and with due regard for

the intent of the legislature in order that the spirit and purpose of the statute be carried out.

*Park 100 Dev. Co. v. Ind. Dep't of State Revenue*, 429 N.E.2d 220, 222-23 (Ind. 1981) (citations omitted). Accordingly, in interpreting statutes "no part should be held to be meaningless if it can be reconciled with the rest" of the statutory language. *Siwinski v. Town of Ogden Dunes*, 949 N.E.2d 825, 828 (Ind. 2011). Moreover, "[s]tatutes relating to the same general subject matter are *in pari materia* (on the same subject) and should be construed together so as to produce a harmonious statutory scheme." *Klotz v. Hoyt*, 900 N.E.3d 1, 5 (Ind. 2009).

### Overview of the Relevant Statutes

Here, the dispute between the parties began shortly after Toyota had informed the Dealers of Toyota's intent to relocate Ed Martin from Anderson to Fishers. Toyota issued these notices pursuant to Indiana Code Section 9-32-13-24(d), which states:

> Before a franchisor enters into a franchise establishing or relocating a[n NMV] dealer within a relevant market area where the same line make is represented, the franchisor shall give written notice to each [NMV] dealer of the same line make in the relevant market area of the franchisor's intention to establish an additional dealer or to relocate an existing dealer within that relevant market area.

The Dealers objected to Toyota's plan, and, after negotiations with Toyota failed, the Dealers each filed a declaratory judgment action before the Division pursuant to Indiana Code Section 9-32-13-24(e), which states:

> Not later than thirty (30) days after:
>
>> (1) receiving the notice provided for in subsection (d); or
>>
>> (2) the end of any appeal procedure provided by the franchisor;
>
> a[n NMV] dealer may bring a declaratory judgment action before the division to determine *whether good cause exists for the establishing or relocating of a proposed [NMV] dealer. If an action is filed under this section, the franchisor may not establish or relocate the proposed [NMV] dealer until the division has rendered a decision* on the matter. An action brought under this section shall be given precedence over all other matters pending before the division.

(Emphasis added.)

[9] The very next provision of the Indiana Code states that, in determining "whether good cause exists *for establishing or relocating an additional [NMV] dealer* for the same line make," the Division:

> shall take into consideration the existing circumstances, including the following:
>
>> (1) Permanency of the investment.

(2) Effect on the retail new motor vehicle business and the consuming public in the relevant market area.

(3) Whether it is injurious or beneficial to the public welfare.

(4) Whether the [NMV] dealers of the same line make in that relevant market area are providing adequate competition and convenient consumer care for the motor

vehicles of that line make in that market area, including the adequacy of motor vehicle sales and qualified service personnel.

(5) Whether the establishment or relocation of the [NMV] dealer would promote competition.

(6) Growth or decline of the population and the number of new motor vehicle registrations in the relevant market area.

(7) The effect on the relocating dealer of a denial of its relocation into the relevant market area.

Ind. Code § 9-32-13-24(f) (2014) (emphasis added).

Thus, the purpose underlying Toyota's notice, the Dealers' declaratory actions, and the Division's review of those actions is to maintain the status quo in a given market until the Division has had the opportunity to fully assess the impact of the proposed change in that market. As the Third Circuit has stated with respect to the federal statutes on which Indiana's statutes are based, these

are "remedial statute[s] enacted to redress the economic imbalance and unequal bargaining power between large automobile manufacturers and local dealerships, protecting dealers from unfair termination and other retaliatory and coercive practices." *Maschio v. Prestige Motors*, 37 F.3d 908, 910 (3d Cir. 1994).

[11]   By giving the Dealers the notice required under Section 9-32-13-24(d), at least initially Toyota believed the Dealers might be within "the relevant market area" where it had proposed to relocate Ed Martin. *See* I.C. § 9-32-13-24(d). Under another section of the Indiana Code:

> "Relevant market area" means the following:
>
> (1)  With respect to a[n NMV] dealer who plans to relocate the dealer's place of business *in a county* having a population of more than one hundred thousand (100,000), the area within a radius of six (6) miles of the intended site of the relocated dealer. The six (6) mile distance shall be determined by measuring the distance between the nearest surveyed boundary of the existing [NMV] dealer's principal place of business and the nearest surveyed boundary line of the relocated [NMV] dealer's place of business.
>
> (2)  With respect to a:
>
> > (A)  *proposed [NMV] dealer*; or
> >
> > (B)  [NMV] dealer who plans to relocate the dealer's place of business in a county having a population of not more than one hundred thousand (100,000);
>
> the area within a radius of ten (10) miles of the intended site of the proposed or relocated dealer. The ten (10) mile distance shall

be determined by measuring the distance between the nearest surveyed boundary line of the existing [NMV] dealer's principal place of business and the nearest surveyed boundary line of the proposed or relocated [NMV] dealer's principal place of business.

I.C. § 9-32-2-20 (emphases added).

[12] This appeal turns on the meaning of two phrases: "proposed [NMV] dealer" and "in a county." The Division concluded that Ed Martin is not a "proposed [NMV] dealer" but an existing dealer that is relocating "in a county" with a population greater than 100,000 people and, thus, that the relevant market area is six miles around Ed Martin's new location. As explained below, the Division's interpretation of both of these phrases is contrary to law.

### *"Proposed [NMV] Dealer"*

[13] The Division concluded that a "proposed [NMV] dealer" under Section 9-32-2-20(2)(A) can mean only a newly created business. In other words, "proposed [NMV] dealer" cannot mean an existing, but relocating, business. Thus, the Division concluded that the relevant market area for Ed Martin's relocated dealership was a six-mile radius around its new site rather than a ten-mile radius. *See id.* This, in turn, excluded the Dealers from being affected, as a statutory matter, by the proposed relocation. *See id.*

[14] But the Division's interpretation of Section 9-32-2-20(2)(A) is contrary to the plain language of Section 9-32-13-24(e)—the only other place in Article 9-32 in which the phrase "proposed [NMV] dealer" appears. *See generally* I.C. §§ 9-32.

Again, Section 9-32-13-24(e) authorizes the Dealers to bring a declaratory judgment action for the Division to determine whether good cause exists "for the . . . relocating of a proposed [NMV] dealer." And Section 9-32-13-24(e) states that Toyota "may not . . . relocate the proposed [NMV] dealer" until the Division has rendered a decision. Thus, Section 9-32-13-24(e) clearly contemplates the relocation of a "proposed [NMV] dealer." The Division's narrow interpretation of "proposed [NMV] dealer" under Section 9-32-2-20(2)(A), however, renders the language of Section 9-32-13-24(e) meaningless because it is not possible to challenge the relocation of a "proposed [NMV] dealer," let alone to halt the proposed relocation or determine whether that relocation is done with good cause, if that dealer does not already exist. An interpretation of statutory text that renders related statutory text meaningless instead of in harmony is to be avoided. *See Siwinski*, 949 N.E.2d at 828; *Klotz*, 900 N.E.3d at 5.

[15] A "proposed [NMV] dealer" under Section 9-32-2-20(2)(A) must mean the same thing that it means under Section 9-32-13-24(e). Specifically, a "proposed [NMV] dealer" is a dealer that proposes to enter a market where that dealer is not already doing business. This can occur, as the Division recognizes, through the creation of a new business. But this can also occur, as the Division fails to recognize, through the relocation of an existing business. This interpretation gives meaning to, rather than to render meaningless, Section 9-32-13-24(e)'s authorization for a dealer to challenge a franchisor's "establishing or relocating

of a proposed [NMV] dealer" or the franchisor's intent to "establish or relocate the proposed [NMV] dealer." *See Siwinski*, 949 N.E.2d at 828. Both "establish" and "relocate" in those provisions modify "proposed [NMV] dealer." That is, the statute expressly contemplates the relocation of an existing NMV dealer.

[16] This interpretation is also consistent with the very next provision of the Indiana Code, Section 9-32-13-24(f), which instructs the Division on how to determine "whether good cause exists for establishing or relocating *an additional* [NMV] dealer" in a relevant market. (Emphasis added.) Similar to Section 9-32-13-24(e), here "establishing" and "relocating" modify "additional [NMV] dealer." But while subsection (e) identifies the "proposed" NMV dealer, subsection (f) identifies the "additional" NMV dealer in a market. It is clear from reading these two subsections together—again, as is required, *see Klotz*, 900 N.E.3d at 5— that "proposed" and "additional" are used interchangeably, and it is equally clear that the term "additional [NMV] dealer" includes either an entirely new dealer or a relocating dealer. In other words, a "proposed [NMV] dealer" is simply an additional dealer—whether a new business or a relocating, established business—that proposes to enter a designated market. This interpretation accounts for the very purpose of the statute, namely, to have the Division consider the effect of adding an additional dealer to a given market. And this interpretation takes all relevant statutory provisions into account.

[17]     Toyota and the Division assert on appeal that the ordinary meaning of "proposed" excludes established but relocating dealers.[2] That is, they assert that the literal meaning of "proposed" indicates a dealer that is contemplated but does not yet exist. But "the literal meaning of a word in isolation is not controlling upon how the statute as a whole must be interpreted." *Morgan v. State*, 22 N.E.3d 570, 575 (Ind. 2014); *see Park 100 Dev. Co.*, 429 N.E.2d at 222-23. Toyota and the Division's reliance on a literal definition of "proposed" disregards the statutory purpose, the context in which the word appears, and other relevant statutory provisions. The legislative plan and express statutory language demonstrate that a "proposed [NMV] dealer" means a dealer that is proposed to be added to a market, whether that dealer is a wholly new business or a relocating, existing business. And the purpose of our statutes is to protect the existing dealers in the relevant market area from franchisor abuse. The introduction of a "proposed [NMV] dealer" into a marketplace is a potential economic threat to a dealer already located within that market, regardless of whether the "proposed [NMV] dealer" is a wholly new business or a relocating, existing business. The Division's interpretation creates an arbitrary and artificial distinction between a proposed, wholly new dealer and a proposed,

---

[2] Toyota's brief contains numerous complaints that the Dealers have waived or abandoned various positions. We reject those complaints.

relocating dealer not present in the statutes, and it disregards the legislative intent underlying the statutory scheme.

[18] The Division also asserts on appeal that this court should rely on Michigan and West Virginia law for the proper definition of a "proposed [NMV] dealer." But those states define "proposed [NMV] dealer" as terms of art within their statutory schemes. *See* Mich. Comp. Laws § 445.1565(4) (2014); W. Va. Code § 17A-6A-3(13) (2014). Our General Assembly has not defined that term. *See generally* I.C. §§ 9-32-2-1 to -28. And the Division cites no authority to suggest that this material difference was anything other than intended by our legislature. *Cf. Jackson v. State*, ___ N.E.3d ___ 2015 WL 3520870 at *3-*7 (Ind. Ct. App. June 4, 2015) (holding that our legislature intended certain statutory language to include an unstated element because our statutory language tracked federal statutory language and was enacted after federal courts had read the unstated element into the federal statute).

### *"In A County"*

[19] The Division's interpretation of a "proposed [NMV] dealer" is an error that has trickled down into other relevant statutory language. In particular, because the Division concluded that a "proposed [NMV] dealer" can mean only a newly created business, it likewise misinterpreted Section 9-32-2-20(1). Again, that statute defines the relevant market area for a business that plans "to relocate . . .

*in* a county" with a population greater than 100,000 people as a six-mile radius around the NMV dealer's proposed site. (Emphasis added.)

[20] After it defined a "proposed [NMV] dealer" to exclude a relocating business, the Division compounded that error and interpreted "in a county" to mean a relocation either within a county or into a county exceeding the population limit. But when the correct definition of a "proposed [NMV] dealer," which includes a relocating business, is applied, the Division's definition of "in a county" would mean that a business relocating into a county exceeding the population limit would not fall clearly under either Section 9-32-2-20(1), which defines the business's relevant market area as a six-mile radius, or under Section 9-32-2-20(2), which defines the area as a ten-mile radius.

[21] In order to give effect to the legislative distinction between Sections 9-32-2-20(1) and (2), "in a county" under Section 9-32-2-20(1) must mean "within" a county and cannot mean "into" a county. If the proposed relocation is within the same county, our legislature has designed a smaller relevant market area for that business than if the proposed relocation involves a business moving into the county. *See* I.C. § 9-32-2-20. The legislative rationale for the distinction between an intra-county and inter-county relocation is clear. The relocation of a business that already has an established customer base within a county will likely present less of a threat to other businesses located within that county because the businesses are already competing within the same market. On the other hand, when an inter-county relocation is proposed, an additional business

entering the area will attract new customers, and those customers are likely to come from other dealers already located in that market.[3] Thus, our legislature has provided businesses established in a market with the greater protection of a ten-mile relevant market area against an additional business entering that market, whether the "proposed [NMV] dealer" is a newly created dealer or a relocating dealer.

[22] The Division asserts that this interpretation of "in a county" reads "an arbitrary significance to crossing a county line . . . ." Appellee Division's Br. at 16. To the contrary, whether a business is new to a market because it is newly created or because it has relocated from elsewhere, the business is still new to the market, and there is no apparent reason why the same statutory protection provided by our legislature should not apply in both instances. Under the Division's interpretation, however, a ten-mile relevant market area applies to a business that is new to a market merely because it is newly created, but a six-mile relevant market area applies to a business that is new to a market simply because it relocated from elsewhere. "[I]t is a fundamental principle of statutory construction that the court presumes that the legislature does not intend that application of the statute should work irrational consequences."

---

[3] This is not to say that all inter-county relocations will in fact have a meaningful impact on the new marketplace. Indeed, an NMV dealer that simply crosses the street to enter into a new county would likely have no meaningful impact on the market whatsoever. But the question of actual market impact is a question on the merits of a petition; it is not a threshold question of standing, which is the issue in this appeal.

*Wal-Mart Stores, Inc. v. Bathe*, 715 N.E.2d 954, 958 (Ind. Ct. App. 1999), *trans. denied.* Given the economic rationale and the remedial purpose underlying the legislative plan, our legislature could not have intended the Division's disparate, if not irrational, treatment of dealers that propose to locate or relocate into a market.

### *Conclusion*

[23] In sum, the Division's interpretation of Sections 9-32-2-20 and 9-32-13-24(e) is unreasonable and incorrect as a matter of law. The Division misunderstands the meaning of the word "proposed" within the legislative plan. A "proposed [NMV] dealer" cannot mean only a newly created business. The Division's misinterpretation renders other relevant statutory provisions meaningless, contrary to the basic principles of statutory construction that every word and phrase be given meaning and be harmonized with other related provisions. The Division disregards the statutory scheme and fails to account for the fact that the relocation of an existing dealer into the relevant market is every bit as much a threat, if not a greater threat, to the existing dealers within that area as the establishment of a new dealership. An agency's interpretation that is contrary to law is entitled to no deference. Accordingly, we reverse the trial court's judgment and remand to the Division for further proceedings consistent with this opinion.

BAKER, J., concurs.

FRIEDLANDER, J., dissents with separate opinion.

| | |
|---|---|
| Andy Mohr West, INC. d/b/a Andy Mohr Toyota, Bulter Motors, INC. d/b/a Bulter Toyota, and TW Toy INC. d/b/a Tom Wood Toyota<br><br>*Appellants,*<br><br>v.<br><br>Office of the Indiana Secretary of State Auto Dealer Services Division and Carol Mihalik, in her representative capacity as Securities Commissioner of the Auto Dealer Services Division, and Toyota Motor Sales, U.S.A.,<br><br>*Appellees* | Court of Appeals Case No.<br>49A02-1411-PL-812 |

**Friedlander, Judge dissenting.**

[24] I respectfully dissent. The Indiana Dealer Services statutes are undoubtedly inartful, but I am convinced that the Division's interpretation is reasonable. Accordingly, I would defer to the Division's interpretation of the statutes it is tasked with enforcing. *See Chrysler Group, LLC v. Review Bd. of Ind. Dep't of*

*Workforce Dev.*, 960 N.E.2d 118, 124 (Ind. 2012) ("we defer to the agency's reasonable interpretation of such a statute even over an equally reasonable interpretation by another party"); *Ind. Wholesale Wine & Liquor Co. v. State ex rel. Ind. Alcoholic Beverage Comm'n*, 695 N.E.2d 99, 105 (Ind. 1998) (once the reviewing court determined that the agency interpretation was reasonable, the court "should have terminated its analysis" and not addressed the reasonableness of other proposed interpretations).

[25] The majority finds that the purpose of the relevant statutes is to maintain the status quo in a "given market" until the Division has had an opportunity to fully assess the impact of the proposed change in that market. Slip op at 9. What is unclear to me is whether "given market" (as well as the majority's other general market references) is intended to be synonymous with the statutorily-defined term "relevant market area". If it is, then I agree with my colleagues' general statement of legislative purpose.

[26] This purpose is satisfied by the Division's interpretation of the relevant statutes, which allows for review by the Division when an NMV dealer is establishing or relocating within or into a relevant market area (i.e., whenever the status quo is affected in the relevant market area). The majority's interpretation, on the other hand, does not provide for review of a proposed relocation *within* a relevant market area because the relocating dealer is not a "proposed [NVM] dealer".

Pursuant to I.C. § 9-32-13-24(d), before a franchisor, such as Toyota, enters into a franchise establishing or relocating an NMV dealer "within a relevant market area" in which the same line make is already represented, the franchisor must give written notice to such existing dealer(s) of the franchisor's "intention to establish an additional dealer or to relocate an existing dealer within that relevant market area". Following notice, I.C. § 9-32-13-24(e) allows the existing dealer(s) to "bring a declaratory judgment action before the division to determine whether good cause exists for the establishing or relocating of a proposed [NVM] dealer."

I.C. § 9-32-2-20 determines the relevant market area applicable in any given case, which is either a six- or ten-mile radius. The statute provides:

> (1) With respect to a[n NMV] dealer who plans to relocate the dealer's place of business in a county having a population of more than one hundred thousand (100,000), the area within a radius of six (6) miles of the intended site of the relocated dealer….
> (2) With respect to a:
> > (A) proposed [NMV] dealer; or
> > (B) [NMV] dealer who plans to relocate the dealer's place of business in a county having a population of not more than one hundred thousand (100,000);
> the area within a radius of ten (10) miles of the intended site of the proposed or relocated dealer. The ten (10) mile distance shall be determined by measuring the distance between the nearest surveyed boundary line of the existing [NMV] dealer's principal place of business and the nearest surveyed boundary line of the proposed or relocated [NMV] dealer's principal place of business.

[29]    With respect to I.C. § 9-32-2-20(1), the majority interprets "in a county" to include only moves from one location to another location in the same county. Although the majority's interpretation may be reasonable, the Division's interpretation that "in a county" includes both relocations within a county *and* to a different county[4] is also reasonable and, therefore, entitled to substantial deference. *See Chrysler Group, LLC v. Review Bd. of Ind. Dep't of Workforce Dev.*, 960 N.E.2d 118.

[30]    Relying upon the legislative plan, the majority further concludes that a "proposed [NMV] dealer" under I.C. § 9-32-2-20(2)(A) is "a dealer that proposes to enter a market where that dealer is not already doing business." Slip op at 12. This definition, however, begs the essential question. What is the applicable relevant market area?

[31]    Further, I agree with the Division that the majority's interpretation is not consistent with the ordinary meaning of "proposed". I.C. § 9-32-2-20(2) speaks of "proposed" dealers and "relocated" dealers, clearly implying that the former is a planned/projected dealer while the latter is an established/existing dealer. Similarly, the notice provision addresses a franchiser's "intention to establish an

---

[4] In other words, the focus is on the county of destination and its attendant population.

additional dealer *or* to relocate an existing dealer". I.C. § 9-32-13-24(d) (emphasis supplied).

[32] The Division's interpretation of "proposed [NMV] dealer" is also consistent with the definition used in other states, such as Michigan and West Virginia. For example, Michigan defines a proposed NMV dealer as: "a person who has an application pending for a new dealer agreement with a manufacturer or distributor. Proposed motor vehicle dealer does not include a person whose dealer agreement is being renewed or continued." Mich. Comp. Laws Ann. § 445.1565(4). *See also* W. Va. Code Ann. § 17A-6A-3(13) (same definition).

[33] Although both the West Virginia and Michigan statutes expressly differentiate between a proposed dealer and a relocating dealer, their statutes regarding notice and the right to declaratory action are virtually identical to ours. Specifically, notice must be given to same line-make dealers in a relevant market area of a manufacturer/distributor's intention to "establish an additional dealer" or to "relocate an existing dealer" within the same relevant market area. Mich. Comp. Laws Ann. § 445.1576(2); W. Va. Code Ann. § 17A-6A-12(2). Following notice, affected dealers have the right to bring a declaratory judgment action to "determine whether good cause exists for the *establishing or relocating of a proposed [NMV] dealer*." Mich. Comp. Laws Ann. § 445.1576(3) (emphasis supplied). *See also* W. Va. Code Ann. § 17A-6A-12(3).

The reference to proposed NMV dealer in Mich. Comp. Laws Ann. § 445.1576(3) and W. Va. Code Ann. § 17A-6A-12(3) is, of course, perplexing, as the express statutory definitions necessarily foreclose the possibility of a proposed NMV dealer relocating. Further, a strict reading leads to the absurd result that although entitled to notice of a planned relocation, an affected dealer is not entitled to bring a declaratory judgment action because the relocating dealer is not a proposed NMV dealer. Despite the puzzling (and seemingly mistaken) reference to proposed NMV dealer in the Michigan statute, however, the right to protest has been applied "equally to new dealerships and dealerships that are relocating to a new location." *Chrysler Group LLC v. Fox Hills Motor Sales, Inc.*, 776 F.3d 411, 425 n.9 (6th Cir. 2015).

The majority's interpretation of the non-statutorily-defined term and its reliance upon the imprecise language of I.C. § 9-32-13-24(e) leads to similarly troubling results. That is, an existing dealer—though clearly entitled to notice—has no protest rights with respect to an intra-county relocation into the existing dealer's relevant market area because the move would not involve "the establishing or relocating of a *proposed [NMV] dealer*". I.C. § 9-32-13-24(e) (emphasis supplied). This, of course, renders the definitions of relevant market area contained in I.C. § 9-32-2-20(1) and (2)(B) effectively useless. The majority's interpretation also makes meaningless I.C. § 9-32-13-24(a) and (c), which address relocations within a given market area. As already observed, intra-market relocations are never subject to the declaratory judgment provision when the majority's

analysis is taken to its logical conclusion. This could not have been the intent of the legislature.

[36] In my mind, the clear intent of I.C. § 9-32-13-24 is to provide protest rights to affected NMV dealers regardless of whether the franchisor intends to relocate an existing dealer in/to/within the relevant market area or establish an entirely new dealer in the relevant market area. The applicable relevant market area, in turn, determines which dealers have protest rights.

[37] Under its reasonable interpretation of the relevant statutes, the Division determined that the applicable relevant market area in this case was the six-mile radius set out in I.C. § 9-32-2-20(1). The Dealers do not dispute that they are outside this area. Accordingly, I would affirm the trial court's judgment based upon lack of standing.