Cory PIERCE, Judith McIntosh, Thomas Ferrara, Judy Willis, Linda McHargue, and All Other Institutional Teachers at a Juvenile Correctional Facility Who Are Not Certified for Teaching of Special Education, Appellants–Plaintiffs,

v.

STATE of Indiana DEPARTMENT OF CORRECTION, South Bend Juvenile Correctional Facility, Pendleton Juvenile Correctional Facility, Northwest Juvenile Correctional Facility, North Central Juvenile Facility, Indianapolis Juvenile Correctional Facility, Indiana State Personnel Department and Indiana State Employees' Appeals Commission, Appellees–Defendants.

No. 49A04–0706–CV–357.

Court of Appeals of Indiana.

April 30, 2008.

Eric M. Hylton, James B. Chapman, Dann Pecar Newman & Kleiman, Indianapolis, IN, Attorneys for Appellants.

Steve Carter, Attorney General of Indiana, Frances H. Barrow, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellees.

## OPINION

SHARPNACK, Judge.

Cory Pierce, Judith McIntosh, Thomas Ferrara, Judy Willis, Linda McHargue, and all other institutional teachers at a juvenile correctional facility who are not certified for teaching special education (the "Teachers") appeal the trial court's denial of their motion for judgment on the record. The Teachers raise one issue, which we revise and restate as, whether the trial court erred by affirming the State Employees' Appeals Commission's ("SEAC") decision that the Indiana Department of Correction ("DOC") could require all juvenile correctional facility teachers to obtain special education licenses. On cross-appeal, the DOC, et al., argue that the trial court improperly ordered the DOC to comply with the SEAC's recommendations. We affirm in part and reverse in part.

The relevant facts follow. On February 10, 2004, the United States Department of Justice ("DOJ") notified State of Indiana officials in the governor's office of its intent to investigate conditions of confinement at the Logansport Juvenile Intake/Diagnostic Facility, the South Bend Juvenile Correctional Facility, and the Plainfield Juvenile Correctional Facility. On September 9, 2005, the DOJ issued findings and concluded that conditions at the facilities in 2004 violated the constitutional and federal statutory rights of juveniles confined in the facilities.

On February 8, 2006, the State of Indiana and the DOJ entered into an agreement that stated, in part:

\* \* \* \* \* \*

IV. THE STATE'S VOLUNTARY MEASURES TO ENSURE THE PROTECTION OF THE CONSTITUTIONAL RIGHTS OF ALL JUVENILES IN ITS CUSTODY

The State recognizes that the Department of Justice's investigation was confined to the facilities identified in the DOJ's September 9, 2005 findings. In recognition of those deficiencies and in the interest of adequately protecting the constitutional rights of all juveniles confined in the IDOC system, the State voluntarily agrees to implement the substantive remedial measures contained throughout this document, where appropriate, at all juvenile facilities operated by IDOC. The State further agrees to provide periodic, voluntary reports to DOJ regarding the progress of those improvements at facilities that are not the subject of this Agreement, including regular reports resulting from a partnership with IDOC and the Indiana Juvenile Justice Task Force. To facilitate comprehensive monitoring of IDOC's compliance with this provision, the State will provide full access to all of its juvenile facilities at the request of those monitors identified through a process agreed upon with the Indiana Juvenile Justice Task Force.

\* \* \* \* \* \*

C. SPECIAL EDUCATION

The following substantive provisions are intended to address the findings of the United States in connection with its investigation of, and apply only to, South Bend.

1. The State shall, at all times, provide all qualified youth with adequate special education in compliance with the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. 1400, *et seq.,* and regulations promulgated thereunder, and this Agreement.

2. The State shall designate a Director of Education to oversee the special education programs at South Bend. The Director shall meet minimum standards as specified by the State. The State shall provide the Director with sufficient staff and resources to perform the tasks required by this Agreement, including:

   a. Overseeing the special education programming at South Bend, including the development and implementation of policies, procedural manuals, and training programs;

   b. Monitoring whether special education staffing and resources are sufficient to provide adequate special education services to youth at South Bend and to ensure compliance with this Agreement;

   c. Developing and implementing a quality assurance program for special education services;

   d. Developing and implementing an adequate vocational education program for youth with disabilities;

   e. Developing and implementing a curriculum for special education instruction at South Bend;

   f. *Ensuring that special education teachers are appropriately licensed to teach assigned courses by requiring that all licensed teachers at the facility obtain certification in special education by the Indiana Department of Education within 180 days of the date of this Agreement;*

   \* \* \* \* \* \*

Appellant's Appendix at 239–243 (emphasis added).

That same day, John Nally, the Director of Education for the DOC, sent a letter to Sherene Donaldson at the Indianapolis Juvenile Correctional Facility, which stated:

\* \* \* \* \* \*

The purpose of this letter is to inform you of a specific corrective action that impacts all current institutional teachers in the juvenile schools. The agreement, in part, reads,

> "Ensuring that special education teachers are appropriately licensed to teach assigned courses by requiring that all licensed teachers at the facility obtain certification in special education by the Indiana Department of Education within 180 days of the date of this agreement;"

This statement will require that all teachers who currently have special education endorsements on their licenses will maintain those licenses. And, it requires that all institutional teachers in the juvenile schools who do not possess a special education endorsement will immediately begin the process to secure that endorsement. For example, a current institutional teacher with a secondary science license and no special education endorsement will be required to secure that endorsement immediately. The expectation is that all institutional teachers will have the documentation supporting this requirement by August 7, 2006.

Please refer to http://www.doe.state.in.us/dps/licensing/limited/ welcome.html for details on securing the initial emergency permit license. The acquisition of the emergency permit and the subsequent completion of the endorsement are governed by the rules of the Division of Professional Standards, Indiana Department of Education.

While the settlement agreement applies specifically to Logansport and South Bend, the Department has committed to the U.S. Department of Justice that all substantive remedial measures within the agreement will apply to all juvenile facilities.

\* \* \* \* \* \*

*Id.* at 38.

In February and March, the Teachers filed merit employee complaints objecting to the DOC's new requirement that they obtain a special education license. The State Personnel Department denied all of the complaints. The Teachers filed appeals to the SEAC, which assigned the proceeding to an administrative law judge.

On July 7, 2006, the administrative law judge issued a "NON–FINAL ORDER," which provided, in part:

**FINDINGS OF FACT AND CONCLUSIONS OF LAW WITH NON–FINAL ORDER OF THE ADMINISTRATIVE LAW JUDGE**

*STATEMENT OF THE CASE*

In February 2004 the U.S. Department of Justice (DOJ) contacted officials in Indiana to inform them of the DOJ intent to investigate conditions of confinement at the Logansport Juvenile Intake/Diagnostic Facility ("Logansport"), South Bend Juvenile Correctional Facility ("South Bend"), and Plainfield Juvenile Correctional Facility ("Plainfield"). On February 8, 2006, the DOJ and the State of Indiana entered into a Settlement Agreement (the "Agreement") that addressed issues at Logansport and South Bend.

Under the terms of the Agreement the institutional teachers at South Bend would be required to obtain certification in special education by the Indiana Department of Education (DOE) within 180 days of the date of the agreement.

However, it appears that the Department of Correction (DOC) committed to the DOJ that all substantive remedial measures within the Agreement would apply to all Indiana juvenile facilities. Accordingly, on February 8, 2006, the DOC informed the institutional teachers at all juvenile facilities that if they did not have the special education license they would have to take steps to obtain said license.

The DOC offered no financial support, no work time off to pursue the license, and no system to allow for teachers to apply for a waiver when special circumstances exist. Accordingly many of the institutional teachers involved have filed merit complaints. Some of the teachers are not members of the Indiana State Teachers Association (ISTA) but those teachers who attended the prehearing conference on April 25, 2006, agreed to be bound by the result reached for ISTA members through ISTA representation by Doyle McAllister.

Even though the issue here appeared to be legal in nature the parties agreed to an evidentiary hearing. The hearing was held on May 24, 2006, in Indianapolis, Indiana. Mr. McAllister represented the [Teachers]. Joel Lyttle, DOC staff counsel, and Richard Bramer, Deputy Attorney General, appeared for the [Indiana Juvenile Correctional Facilities and the DOC]. The parties agreed that these merit complaints involved a condition of employment (the requirement to obtain the special education license) for the institutional teachers and obviously the condition was unsatisfactory to the [Teachers] or they would not have filed merit complaints. Therefore the merit complaints were properly before the State Employees' Appeals Commission (the "Commission"). The evidence presented at hearing demonstrated the difficulties the [Teachers] would face to obtain the special education license. Also presented were special circumstances for individual teachers, which might preclude them from being able to obtain the license and possibly cost them their jobs.

Clearly the only issue ripe for adjudication by the Commission was the question of whether or not the DOC Commissioner had exceeded his authority by ordering all institutional teachers at juvenile correctional facilities to begin steps to obtain the special education license by a certain date. The Administrative Law Judge asked Mr. McAllister and Mr. Lyttle to file post-hearing briefs addressing the Commissioner's legal authority in this matter. Post-hearing briefs were filed as requested.

Pursuant to Indiana Code (IC) 4–21.5–3–14 the burden of persuasion and the burden of going forward with the evidence was on the [Teachers]. The [Teachers] are asking that the DOC not be allowed to go forward with the requirement that all institutional teachers at juvenile correctional facilities obtain the special education license. The [Teachers] were required to demonstrate that the DOC has violated the law by making this license requirement a condition of employment. The [Teachers] have made no such demonstration. The [Teachers] made the argument that only the Department of Education (DOE) has the authority to supervise teacher licensing. This appears to be true but the DOC order has to do with defining the duties and qualifications of employees of the DOC. The requirement is to obtain the special education license. The DOC would defer to the DOE as to what requirements must be met by the teachers to obtain said license.

The DOC Commissioner's powers and duties are defined at IC 11–8–2–5. The Commissioner's powers and duties include organizing, administering, and supervising the DOC. Further the DOC Commissioner acts as appointing authority for all positions in the department (except the parole board) and is responsible for defining the duties for those positions pursuant to IC 4–15–2. Clearly the DOC Commissioner has the authority to change the job description for any department position if the DOC Commissioner deems the change necessary for efficient operation of any DOC facility.

The [Teachers] have raised other concerns over which the Commission does not have jurisdiction either due to the lack of power to order compliance or due to the prospective nature of the concern. The Administrative Law Judge (ALJ) makes the following recommendations as to these concerns:

1. The DOC offers no funding to assist in obtaining the additional education needed to qualify for the special education license. The ALJ recommends that the DOC make every attempt to obtain funding to assist the [Teachers] in this endeavor. After all, the DOC has ordered the teachers to obtain the license. The ALJ can find no legal prohibition against the DOC funding the additional education at least in part.

2. The DOC establish some sort of system to allow an institutional teacher to apply for a waiver of the special education license requirement. The [Teachers] have presented the following instances which concern the ALJ:

   a. Teachers who do not have a bachelor's degree because a degree is not required to teach certain classes. These teachers cannot obtain a special education license. This may not be a concern as testimony at the hearing indicated that all teachers in this category had been transferred to adult facilities and will continue to teach.

   b. Teachers who are willing to establish firm retirement dates that fall before the special education license can be obtained.

   c. Teachers who have individual or family circumstances that make it difficult if not impossible to obtain the necessary education.

   d. Teachers who are currently on disability and cannot obtain the necessary education at least not while disabled.

   e. Teachers who have no classroom responsibilities.

The possible termination of a state employee due to a future event is prospective in nature and not subject to Commission review. · However, any institutional teacher whose employment is terminated for failure to begin to obtain the special education license by a specific date is eligible to file an individual merit complaint. In the complaint the teacher should detail special circumstances that should have precluded his/her termination and present any efforts taken by the DOC in regard to those special circumstances.

*FINDINGS OF FACT AND CONCLUSIONS OF LAW*

1. In February 2004, the U.S. Department of Justice (DOJ) contacted officials in Indiana to inform them of the DOJ intent to investigate conditions of confinement at certain juvenile correctional facilities.

2. On February 8, 2006, the DOJ and the State of Indiana entered into a settlement agreement (the "agree-

ment") that addressed issues at the Logansport Juvenile Intake/Diagnostic Facility and the South Bend Juvenile Correctional Facility.

3. Under the terms of the agreement the institutional teachers at South Bend would be required to obtain certification in special education by the Indiana Department of Education (DOE) within 180 days of the date of the agreement.

4. Evidence indicates that the Department of Correction (DOC) committed to the DOJ that all substantive remedial measures within the agreement would apply to all Indiana juvenile facilities.

5. Accordingly, on February 8, 2006, the DOC informed the institutional teachers at all juvenile facilities that if they did not have the special education license (the "license") they would have to take steps to obtain said license.

6. The DOC offered no financial assistance, no work time off to pursue the license, and no system to allow for teachers to apply for a waiver when special circumstances exist.

7. Accordingly many of the institutional teachers involved filed merit complaints in which they objected to the requirement to obtain the license to be able to continue teaching for the DOC at a juvenile facility.

8. Clearly the requirement to obtain the license was a condition of employment and obviously the condition of employment was unsatisfactory to the [Teachers]. Accordingly the license issue was ripe for consideration by the State Employees' Appeals Commission (the "Commission").

9. The Commission assigned this proceeding to Chief Administrative Law Judge Tim Rider for adjudication.

10. Some of the institutional teachers who filed complaints were represented by the Indiana State Teachers Association (ISTA) and some were not. At a prehearing conference held on April 25, 2006, all non-union [Teachers] attending agreed to be bound by the results of the litigation brought by the ISTA on behalf of its member teachers.

11. The issue ripe for adjudication by the ALJ was the question of whether of [sic] not the DOC Commissioner had exceeded his authority by ordering all institutional teachers at juvenile facilities to begin steps to obtain the license by a certain date.

12. An evidentiary hearing was held on May 24, 2006, in Indianapolis, Indiana. The evidence presented at hearing was aimed at education the [sic] ALJ on what had transpired to date and what difficulties the teachers faced in obtaining the license.

14. Pursuant to Indiana Code (IC) 4-21.5-3-14, the burden of persuasion and the burden of going forward with the evidence was on the [Teachers]. The [Teachers] were asking the Commission to preclude the DOC from going forward with the requirement to obtain the license. Accordingly, the [Teachers] were required to demonstrate that the DOC was violating the law by making this requirement a condition of employment.

15. Considering both evidence presented at hearing and the legal analysis presented in the post-hearing

briefs, the ALJ can find no basis to support the [Teachers'] position. The DOC Commissioner's powers are defined at IC 11–8–2–5. The reading of this Statute clearly demonstrates that the DOC Commissioner has the authority to change the job description of any department position if he deems the change necessary for the efficient operation of the DOC.

16. The [Teachers] raised other concerns that are either not within the authority of the Commission to alleviate such as the DOC allocating funds to pay for all or part of the expense of obtaining the license or are prospective in nature such as a teacher losing his/her job in the future due to circumstances which preclude the teacher from obtaining the license.

17. The ALJ in the "STATEMENT OF THE CASE" has made recommendations in regard to matters contained in finding 16 above. Hopefully the DOC Commissioner will give serious consideration to said recommendations.

### NON–FINAL ORDER

The [Teachers] have made no showing that the DOC Commissioner's order requiring the [Teachers] to begin an effort to obtain a special education license by a certain date is in excess of the authority of the DOC Commissioner. Accordingly the [Teachers'] merit complaints are dismissed.

*Id.* at 177–181.

The Teachers appealed the administrative law judge's order to the SEAC, which stated:

You are notified the State Employees' Appeals Commission has affirmed, without modification, the "Findings of Fact and Conclusions of Law with Non-final Order of the Administrative Law Judge" as the Commission's findings of fact and conclusions of law with final order. **The Commission calls the [Indiana Juvenile Correctional Facilities & Department of Correction]'s attention to the recommendations contained in the "Statement of the Case" presented by the Administrative Law Judge. The Commission has adopted these recommendations by a 5–0 vote. The Commission highly recommends that the [Indiana Juvenile Correctional Facilities & Department of Correction] give the utmost consideration to these recommendations.** The Commission is the ultimate authority and this action is its final determination.

*Id.* at 36.

The Teachers filed a petition for judicial review in the Marion Circuit Court and a motion for judgment on the record. The trial court entered the following order:

\*      \*      \*      \*      \*      \*

The Court, having reviewed the record in this matter, and having heard the arguments of counsel, now FINDS and CONCLUDES as follows:

1. Pursuant to an agreement with the United States Department of Justice (the "DOJ"), the Department of Correction (the "DOC") agreed to require all teachers employed at certain DOC juvenile facilities to obtain special education licenses or temporary emergency special education licenses from the Indiana Department of Education (the "DOE").

2. The Commissioner of the DOC (the "Commissioner") decided to implement this requirement for all juvenile correctional facilities statewide, not merely the ones singled out by the

DOJ. (Administrative Record, Ex. R–A, § IV; *see e.g.*, Ex. P–8.)

3. The DOE makes available temporary emergency special education licenses for individuals while they work to attain full-fledged licenses. (Hr'g before ALJ held May 24, 2006, Sriver Test., Tr. Pp. 49–54.)

4. It was acceptable to the DOC for the teachers to get the temporary permits. (Hr'g of May 24, 2006, Nally Test., Tr. Pp. 139–142.)

5. The plaintiffs are general education teachers who are employed by the DOC at juvenile facilities which were not subject to the DOJ investigation; they are subject to the new standard due to the Commissioner's voluntary discretionary act.

6. The plaintiffs have not obtained full-fledged special education teaching licenses.

7. The plaintiffs brought an action before SEAC, alleging the DOC lacked the statutory authority to establish this policy—arguing this authority lies exclusively with the DOE—and that the plaintiffs' compliance with the new requirements would work a hardship on them.

8. After holding a hearing and receiving briefs, the administrative law judge (the "ALJ") issued his written non-final findings of fact and conclusions of law.

9. The ALJ stated, "Clearly the only issue ripe for adjudication by the Commission was the question of whether or not the DOC Commissioner had exceeded his authority by ordering all institutional teachers at juvenile correctional facilities to begin steps to obtain the special education license by a certain date."

10. The ALJ determined the decision to require all juvenile correctional facility teachers to obtain a special education teaching license lies with the DOC as a matter of law.

11. The ALJ did not consider the plaintiffs' individualized hardship claims, although he did recommend that the DOC make exceptions in certain cases.

12. SEAC affirmed without modification and explicitly approved the ALJ's recommendations by a unanimous vote.

13. In this Court, the plaintiffs filed the instant petition for judicial review of SEAC's action, pursuant to IND. CODE § 4–21.5–5. The plaintiffs argue the Commissioner acted without statutory authority. The plaintiffs do not contest SEAC's determination that their individual hardship claims were not ripe; nevertheless, the plaintiffs argue SEAC's recommendations are binding on the DOC.

14. The plaintiffs seek relief under Ind. Code § 4–21.5–5–14(d)(1), alleging SEAC's action was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. Furthermore, the plaintiffs seek relief under IND. CODE § 4–21.5–5–14(d)(5), alleging SEAC's action was unsupported by substantial evidence. To prevail under either theory, the plaintiffs have the burden of proving SEAC's action was invalid. Ind.Code § 4–21.5–5–14(a).

15. The issues raised are questions of law, and the relevant facts are not in dispute. However, the administrative record does provide context.

16. "[T]he interpretation of a statute by the administrative agency charged with its enforcement is entitled to great weight." *State v. Young*, 855 N.E.2d 329, 335 (Ind.Ct.App.2006)

(citing *Natural Res. Comm'n of Indiana Dep't of Natural Res. v. Porter County Drainage Bd.*, 576 N.E.2d 587, 589 (Ind.1991) and interpreting that the Indiana Supreme Court in *Horseman v. Keller*, 841 N.E.2d 164 (Ind.2006), did not intend to overrule the long line of cases establishing agency deference). "This is true so long as the agency's interpretation is reasonable." *Higgins v. State*, 855 N.E.2d 338, 341–42 (Ind.Ct. App.2006) (companion case to *Young*) (citing *Shaffer v. State*, 795 N.E.2d 1072 (Ind.Ct.App.2003)). "Where it is unreasonable, or where it is inconsistent with the statute itself, we will, of course, accord it no deference." *Id.* (citing *LTV Steel Co. v. Griffin*, 730 N.E.2d 1251 (Ind.2000)).

17. SEAC upheld the Commissioner's action, deciding that it was within his statutory authority to require DOC-employed teachers to obtain special education licenses. The agencies entitled to deference are the DOC and SEAC, as they are enforcing their respective statutes. The DOC's intent is laid out in §§ III and IV of the Agreement (Ex. R–A, pp. 4, 5), and SEAC's interpretations are evidenced in the opinion of the ALJ and affirmance by SEAC.

18. The plaintiffs assert that the DOE is entitled to deference, but they do not provide a contrary interpretation by the DOE. The record indicates the DOE is cooperating with the DOC, the significance of which works in the DOC's favor. *Cf. Young*, 855 N.E.2d at 335–36 ("Courts should be reluctant to overturn the considered, and identical, interpretation of a statute by three different agencies charged with enforcing the statute.")

19. There is no dispute that the plaintiffs are employed by the DOC and not the DOE, so no statute providing for staffing authority by the DOE is applicable.

20. SEAC upheld the Commissioner's decision, finding that he acted pursuant to Ind.Code § 11–8–2–5(a)(3). This statute gives the Commissioner the authority to define the duties of all positions within the DOC and to appoint individuals to all of these positions, with parole board employees being the sole exception. The appointive power itself entails many other employment actions beyond merely hiring people—namely, layoffs, suspensions, and dismissals. Ind.Code § 4–15–2–33 through 35.

21. The plaintiffs argue that the Commissioner's actions amounted to establishing job "requirements," which they allege is distinct from defining job duties and appointing employees.

22. In the statutory context, namely Ind.Code § 11–8–2–5(a)(1) (giving the Commissioner the authority to "[o]ganize [sic] the department and employ personnel necessary to discharge the duties and powers of the department"), Ind Code § 11–8–2–5(a)(2) (giving the Commissioner administrative and supervisory authority over all state-owned or operated correctional facilities), and Ind.Code § 11–8–2–5(b)(4) (giving the Commissioner the other authority reasonably necessary to discharge his duties and powers), it is clear that hairsplitting is not the statutory approach. The plaintiffs have not met their burden of proving SEAC erroneously determined the Commissioner acted pursuant to Ind.Code 11–8–2–5(a)(1).

23. Even if the Commissioner did have the statutory authority to establish minimum qualifications of DOC em-

ployees, the plaintiffs argue, other Indiana law usurps that power when those DOC employees are teachers. The plaintiffs allege a hierarchy is established by statutes referencing one another, namely that Ind.Code § 11–8–2–5(a)(3) requires the Commissioner to comply with Ind.Code § 4–15–2, which itself is controlled by Ind.Code § 11–10–5. At bottom, the plaintiffs argue the Commissioner infringed on the DOE's "licensing" authority, thereby violating Ind.Code § 11–10–5–2. According to the plaintiffs, the DOE's authority to issue special education licenses trumps the DOC's authority to require DOC employees to obtain those licenses. The plaintiffs' have cited no cases making such an interpretation and the Court is unable to find any.

24. The statutes concerning educational licensing establish that it is within the DOE's realm to establish the minimum requirements applicants must meet to obtain DOE-issued licenses— in this case special education certificates. *See* Ind.Code §§ 11–10–5–2; 20–28–44; 20–28–4–5. The authority to establish minimum requirements for *licensure* and the authority to establish minimum requirements for *employment* are not one and the same. The General Assembly did not define a teaching "license" to be more than a document granting permission to its holder to teach, Ind.Code § 20–28–1–7, so SEAC did not err in finding the Commissioner did not infringe on the DOE's "licensing" authority.

25. The plaintiffs further refer to the ALJ's recommended policy exceptions, which were adopted unanimously by SEAC.

26. SEAC also made recommendations to the Department of Correction to make every attempt to obtain funding to assist the Plaintiffs in obtaining their special education licenses, and that the Department establish some sort of system to allow an institutional teacher to apply for a waiver of the special education license requirement. There is no evidence that the Defendants have complied with these recommendations.

27. The Court hereby orders the Department of Correction to comply with the recommendations made by SEAC dealing with the Department obtaining funding for the teachers to pay for their special education classes and to establish a waiver procedure for teachers allowing them not to have to obtain the special education license.

28. In *Fromuth v. State*, [174 Ind.App. 280] 367 N.E.2d 29, 34 (Ind.Ct.App. 1997), the Court of Appeals held that pursuant to I.C. § 4–15–2–35, that recommendations made by SEAC are mandatory. The Court specifically held:

The language which clearly shows that the recommendation of the Appeals Commission is mandatory, rather than advisory, is found in IC 4–15–2–35, *supra*, where it says that "the appointing authority shall follow the recommendation of the commission." The "shall" is mandatory, not advisory or precatory.

29. SEAC has the authority to recommend to the Department of Correction such things as funding for the special education licensure classes, paid time off, waivers for teachers who are close to retirement, teach vocational education, have family circumstances preventing them from obtaining a license, are on disability, or have no classroom responsibilities.

30. The law is clear that SEAC's recommendations are mandatory and must be followed by the Department of Correction.

31. Therefore, this Court hereby orders the Department of Correction to follow SEAC's recommendations regarding funding, paid time off, and waivers.

WHEREFORE, the Court, having considered Plaintiffs' Motion for Judgment on the Record, and being duly advised in the premises, hereby orders that SEAC's decision that the Department of Correction has the authority to order all institutional teachers to obtain special education licenses is affirmed, and the Plaintiffs' Motion for Judgment on the Record is denied on that issue. The Department of Correction is hereby ordered to comply with the recommendations issued by SEAC as previously discussed in this Order.

*Id.* at 10–17.

## I.

▮▮▮ The first issue is whether the trial court erred by affirming the SEAC's decision that the DOC could require all juvenile correctional facility teachers to obtain special education licenses. When we review the decision of an administrative agency, we are bound by the same standard of review as the trial court. *Ind.–Ky. Elec. Corp. v. Comm'r, Ind. Dep't of Envtl. Mgmt.*, 820 N.E.2d 771, 776 (Ind.Ct.App. 2005). We may neither try the case de novo nor substitute our judgment for that of the agency. *Id.* Under the Administrative Orders and Procedures Act ("AOPA"), we will reverse an administrative decision only if the person seeking judicial relief has been prejudiced by an agency action that is: "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) contrary to constitutional right, power, privilege, or immunity; (3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (4) without observance of procedure required by law; or (5) unsupported by substantial evidence." Ind. Code § 4–21.5–5–14 (2004). "A decision is arbitrary and capricious when it is made without any consideration of the facts and lacks any basis that may lead a reasonable person to make the same decision made by the administrative agency." *Ind. Dep't of Envtl. Mgmt. v. Schnippel Constr., Inc.*, 778 N.E.2d 407, 412 (Ind.Ct.App.2002), *trans. denied.* "The party seeking judicial review bears the burden of demonstrating that the agency's action is invalid." *Andrianova v. Family and Soc. Servs. Admin.*, 799 N.E.2d 5, 8 (Ind.Ct.App.2003).

The Teachers argue that the DOC lacked the authority to require them to obtain a special education license. Resolution of this issue requires that we interpret Title 11 of the Indiana Code, which governs corrections, and Title 20, which governs education. "The first step in interpreting any Indiana statute is to determine whether the legislature has spoken clearly and unambiguously on the point in question." *St. Vincent Hosp. & Health Care Ctr., Inc. v. Steele*, 766 N.E.2d 699, 703–704 (Ind.2002). If a statute is unambiguous, we must give the statute its clear and plain meaning. *Bolin v. Wingert*, 764 N.E.2d 201, 204 (Ind.2002). A statute is unambiguous if it is not susceptible to more than one interpretation. *Elmer Buchta Trucking, Inc. v. Stanley*, 744 N.E.2d 939, 942 (Ind.2001). However, if a statute is susceptible to multiple interpretations, we must try to ascertain the legislature's intent and interpret the statute so as to effectuate that intent. *Bolin*, 764 N.E.2d at 204. We presume the legislature intended logical application of the language used in the statute, so as to avoid unjust or absurd results. *Id.*

"An interpretation of a statute by an administrative agency charged with the duty of enforcing the statute is entitled to great weight, unless this interpretation would be inconsistent with the statute itself." *LTV Steel Co. v. Griffin*, 730 N.E.2d 1251, 1257 (Ind.2000). But an administrative agency does not have the power to make decisions properly committed to another agency. *Id.* "Deference to an agency's interpretation of a statute becomes a consideration when a statute is ambiguous and susceptible of more than one reasonable interpretation." *State v. Young*, 855 N.E.2d 329, 335 (Ind.Ct.App. 2006). When a court is faced with two reasonable interpretations of a statute, one of which is supplied by an administrative agency charged with enforcing the statute, the court should defer to the agency. *Id.* If a court determines that an agency's interpretation is reasonable, it should terminate its analysis and not address the reasonableness of the other party's proposed interpretation. *Id.* "Terminating the analysis recognizes 'the general policies of acknowledging the expertise of agencies empowered to interpret and enforce statutes and increasing public reliance on agency interpretations.'" *Shaffer v. State*, 795 N.E.2d 1072, 1077 (Ind.Ct. App.2003) (quoting *Ind. Wholesale Wine & Liquor Co., Inc. v. State ex rel. Ind. Alcoholic Beverage Comm'n*, 695 N.E.2d 99, 105 (Ind.1998)). However, an agency's incorrect interpretation of a statute is entitled to no weight. *Peabody Coal Co. v. Ind. Dep't of Natural Res.*, 606 N.E.2d 1306, 1308 (Ind.Ct.App.1992). If an agency misconstrues a statute, there is no reasonable basis for the agency's ultimate action and the trial court is required to reverse the agency's action as being arbitrary and capricious. *Id.*

Ind.Code Chapter 11–8–2 governs the organization of the DOC. Specifically, Ind.Code § 11–8–2–5 (Supp.2005) governs the powers and duties of the commissioner of the DOC and provides:

(a) The commissioner shall do the following:

(1) Organize the department and employ personnel necessary to discharge the duties and powers of the department.

(2) Administer and supervise the department, including all state owned or operated correctional facilities.

(3) Except for employees of the parole board, be the appointing authority for all positions in the department within the scope of IC 4–15–2 and define the duties of those positions in accord with IC 4–15–2.

(b) The commissioner may:

\*　　\*　　\*　　\*　　\*　　\*

(4) exercise any other power reasonably necessary in discharging the commissioner's duties and powers.

Ind.Code § 11–8–2–8 (Supp.2005) governs the "personnel; application of laws; standards; programs" and provides, in part, that "[t]he [DOC] shall cooperate with the state personnel department in establishing minimum qualification standards for employees of the [DOC] and in establishing a system of personnel recruitment, selection, employment, and distribution." On the other hand, Ind.Code § 20–28–5–1 (Supp. 2005) provides that "[t]he [DOE] is responsible for the licensing of teachers."

The Teachers argue that "[b]y changing the qualifications to be a juvenile correctional facility teacher, the [DOC] usurped the Department of Education's authority to establish teacher licensing requirements...." Appellant's Brief at 11. In support of this contention, they argue that the trial court erred by "interpreting I.C.

§ 11–8–2–5(a)(3) without considering that statute in light of and in conjunction with" Ind.Code Chapter 11–10–5, which governs academic and vocational education within the DOC. *Id.* at 12–13.

Ind.Code § 11–10–5–1 (Supp.2005), which governs the implementation of academic and vocational education curricula and programs, provides:

The [DOC] shall, after consulting with the state superintendent of public instruction and the Indiana commission on vocational and technical education of the department of workforce development, implement academic and vocational education curricula and programs for confined offenders, by utilizing qualified personnel employed by the [DOC] or by arranging for instruction to be given by public or private educational agencies in Indiana. The [DOC] shall include special education programs, which shall be governed under IC 20–35–2 . . . .

Ind.Code Chapter 20–35–2, which governs the Division of Special Education, provides, in pertinent part:

(b) . . . . The director [of special education] has the following duties:

(1) To do the following:

(A) Have general supervision of all programs, classes, and schools for children with disabilities, including those conducted by . . . the department of correction . . . .

\* \* \* \* \* \*

(2) To adopt, with the approval of the state board, rules governing the curriculum and instruction, including licensing of personnel in the field of education, as provided by law.

(3) To inspect and rate all schools, programs, or classes for children with disabilities to maintain proper standards of personnel, equipment, and supplies.

\* \* \* \* \* \*

Ind.Code § 20–35–2–1 (Supp.2007). Ind. Code § 11–10–5–2 provides that "[t]he advisory board of the division of professional standards of the department of education established by IC 20–28–2–2 shall, in accord with IC 20–28–4 and IC 20–28–5, adopt rules under IC 4–22–2 for the licensing of teachers to be employed by the [DOC]." Thus, these statutes provide that the DOC shall arrange special education programs for correctional facilities, the director of special education shall have supervisory authority over these programs, and the DOE shall adopt rules for the licensing of teachers to be employed by the DOC.

We first note that the portions of Title 20 referenced by Ind.Code Chapter 11–10–5 provide for the DOE's authority over the licensing of teachers in general, but do not provide it with supervisory authority over all educational programs in correctional facilities. Furthermore, a license "refers to a document issued by the department that grants permission to serve as a particular kind of teacher. The term includes any certificate or permit issued by the department [of education]." Ind.Code § 20–28–1–7 (Supp.2005). The term does not refer to the prerequisites for employment with the DOC. Although Ind.Code Chapter 20–35–2 provides that the director of special education has "general supervision of all programs . . . for children with disabilities, including those conducted by . . . the [DOC]," the chapter likewise does not provide the director of special education with supervisory authority over all educational programs in correctional facilities. Accordingly, no statute cited by the Teachers prevents the DOC from requiring all of its teachers to obtain a special education license, and we there-

fore conclude that the DOC's requirement that all juvenile correctional facility teachers obtain a special education license does not interfere with the DOE's power under Title 20. *See Bd. of Sch. Trustees of Maconaquah Sch. Corp. v. Ind. Educ. Employment Relations Bd.*, 497 N.E.2d 1084, 1087 (Ind.Ct.App.1986) (noting that "there is no statute which precludes school corporations from imposing higher requirements than those imposed by the State Board of Education for any particular position."). We cannot say that the DOC's interpretation of its powers under Ind.Code § 11–8–2–5 is inconsistent with Title 11 and Title 20 or that the interpretation is unreasonable. Accordingly, we cannot say that the SEAC's conclusion is arbitrary, capricious, or in violation of constitutional, statutory or legal principles. *See, e.g., Conquest v. State Employees' Appeals Comm'n*, 565 N.E.2d 1086, 1088–1089 (Ind.Ct.App.1991) (affirming the trial court's decision upholding the SEAC's determination), *trans. denied.*

## II.

The next issue is whether the trial court improperly ordered the DOC to comply with the SEAC's recommendations. The DOC argues that the SEAC's recommendations were not mandatory.

Initially, we note that the administrative law judge's order, which the SEAC affirmed, "without modification," stated:

11. The issue ripe for adjudication by the ALJ was the question of whether of [sic] not the DOC Commissioner had exceeded his authority by ordering all institutional teachers at juvenile facilities to begin steps to obtain the license by a certain date.

   \*  \*  \*  \*  \*  \*

16. The [Teachers] raised other concerns that are either not within the

authority of the Commission to alleviate such as the DOC allocating funds to pay for all or part of the expense of obtaining the license or are prospective in nature such as a teacher losing his/her job in the future due to circumstances which preclude the teacher from obtaining the license.

Appellant's Appendix at 36, 180–181. Thus, the administrative law judge and the SEAC concluded that they were not exercising jurisdiction over the Teachers' hardship claims.

The Teachers argue that the recommendations were mandatory based upon Ind. Code §§ 4–15–1.5–6 (2004) and 4–15–2–35 (Supp.2005). Ind.Code § 4–15–1.5–6 governs the powers and duties of the SEAC and provides:

The appeals commission is hereby authorized and required to do the following:

(1) To hear or investigate those appeals from state employees as is set forth in IC 4–15–2, and fairly and impartially render decisions as to the validity of the appeals or lack thereof. Hearings shall be conducted in accordance with IC 4–21.5.

(2) To make, alter, or repeal rules by a majority vote of its members for the purpose of conducting the business of the commission, in accordance with the provisions of IC 4–22–2.

(3) To recommend to the personnel director such changes, additions, or deletions to personnel policy which the appeals commission feels would be beneficial and desirable.

Ind.Code § 4–15–2–35 governs the appeal and complaint procedure and provides, in part:

   \*  \*  \*  \*  \*  \*

If the commission finds that the action against the employee was taken on the basis of politics, religion, sex, age, race, or because of membership in an employee organization, the employee shall be reinstated without loss of pay. In all other cases the appointing authority shall follow the recommendation of the commission, which may include reinstatement and payment of salary or wages lost by the employee, which may be mitigated by any wages the employee earned from other employment during a dismissed or suspended period.

\* \* \* \* \* \*

The Indiana Supreme Court addressed these statutes in *Ind. Dep't of Envtl. Mgmt. v. West*, 838 N.E.2d 408 (Ind.2005). In *West*, the court held that "Subsection (3) [of Ind.Code § 4–15–1.5–6] speaks broadly to SEAC's authority to recommend policy to the Personnel Department, not to specific cases considered under Subsection (1) [of Ind.Code § 4–15–1.5–6] or Section 4–15–2–35." *West*, 838 N.E.2d at 417. The court also held that the "SEAC's authority under Subsection (3) is independent and unrelated to its appellate authority under Subsection (1)." *Id.* at 418.

■ Here, the SEAC adopted the administrative law judge's conclusion that the only issue ripe for adjudication was the question of whether or not the DOC Commissioner had exceeded his authority by ordering all institutional teachers at juvenile facilities to begin steps to obtain the license by a certain date. The SEAC also adopted the administrative law judge's conclusion that the Teachers' concerns regarding funds to pay for the expense of obtaining the license were prospective in nature. Thus, the SEAC did not make recommendations regarding the issues of funding to assist in obtaining additional education and establishing a system to allow an institutional teacher to apply for a waiver while deciding a specific case. Consequently, the SEAC made recommendations under Subsection 3 of Ind.Code § 4–15–1.5–6, the section that "speaks broadly to SEAC's authority to recommend policy," and not for specific cases, which are considered under Subsection 1. *West*, 838 N.E.2d at 417.

The Teachers cite *Fromuth v. State ex rel. Ind. State Employees' Ass'n, Inc.*, 174 Ind.App. 280, 367 N.E.2d 29 (1977), *reh'g denied*. In *Fromuth*, a pay increase of fifteen percent became effective for all employees of the DOC at the Indiana State Prison except for those employees who filled positions that required a college degree even though they worked in a maximum security institution. 174 Ind.App. at 281, 367 N.E.2d at 30–31. In accordance with the complaint procedure set forth in Ind.Code § 4–15–2–35,[1] several employees filed a complaint. *Id.* at 281, 367 N.E.2d at 31. The employees took their complaint to the State Personnel Director, who denied their complaint requesting maximum security pay. *Id.* at 282, 367 N.E.2d at 31. The employees appealed the decision to the SEAC, which reversed the decision of the State Personnel Director and recommended that, because of their potentially hazardous contact with the inmates at the state prison, the employees should receive the maximum security pay increase. *Id.* The State Personnel Board refused to follow the recommendation of the SEAC. *Id.*

On appeal, this court addressed whether the SEAC, "acting upon the complaints of state employees pursuant to I.C. 4–15–1.5–6[2] and I.C. 4–15–2–35, [had] the authority

1. Subsequently amended by Pub.L. No. 36–1981, § 1 (eff. July 1, 1981), Pub.L. No. 153–1994, § 3 (eff. July 1, 1994), Pub.L. No. 222–2005, § 19 (emerg. eff. May 11, 2005).

2. Subsequently amended by Pub.L. No. 23–1982, § 6 (eff. July 1, 1982), Pub.L. No. 5–1988, § 24 (eff. July 1, 1988).

to require that an appointing authority follow its mandatory recommendations." *Id.* at 283, 367 N.E.2d at 32. The court noted that Ind.Code § 4–15–1.5–6(c) provided, in part, that "[t]he appeals commission is hereby authorized and required . . . [t]o *recommend* to the personnel board such changes, additions or deletions to personnel policy which the appeals commission feels would be beneficial and desirable." *Id.* at 285–286, 367 N.E.2d at 33 (emphasis added). The State Personnel Director argued that the word "recommend" in Ind.Code § 4–15–1.5–6 was "advisory rather than mandatory." *Id.* at 286, 367 N.E.2d at 33. The court held that "[t]he language which clearly shows that the recommendation of the [SEAC] is mandatory, rather than advisory, is found in IC 4–15–2–35 . . . where it says that 'the appointing authority shall follow the recommendation of the commission.' The 'shall' is mandatory, not advisory or precatory." *Id.* at 286, 367 N.E.2d at 34.

We find *Fromuth* distinguishable. *Fromuth* involved a recommendation addressed to a specific case in which the claims of the employees were found to be meritorious. Here, the SEAC did not reach the merits of the claims that its recommendations address. *See Rockville Training Ctr. v. Peschke*, 450 N.E.2d 90, 92 (Ind.Ct.App.1983) (holding that, under Ind.Code § 4–15–2–35, "[t]he fact a recommendation is made presumes a decision that the complaint is meritorious, both procedurally and substantively" and "[t]he recommendation is the solution to the complaint, i.e., the remedy, and, as such, presupposes there is merit to the complaint"). Rather, the SEAC's recommendations were made under Subsection 3 of Ind.Code § 4–15–1.5–6, which is independent and unrelated to its appellate authority under Subsection 1 of Ind.Code § 4–15–1.5–6 or Ind.Code § 4–15–2–35, which involve the consideration of specific cases. *See West,*

838 N.E.2d at 417–418. Based on *West* and the fact that *Fromuth* involved a recommendation in a specific case, we do not find *Fromuth* instructive.

In summary, we conclude that the administrative law judge and the SEAC did not exercise jurisdiction over the issues the recommendations address. Any "recommendation" made by the SEAC did not involve a specific case and therefore does not constitute a mandatory recommendation. Thus, the trial court improperly ordered the DOC to comply with the SEAC's recommendations.

For the foregoing reasons, we affirm in part and reverse in part the trial court's order.

Affirmed in part and reversed in part.

BARNES, J. and VAIDIK, J. concur.