**INDIANA DEPARTMENT OF CORRECTION, Appellant–Respondent,**

**v.**

**Douglas HALEY, Appellee–Petitioner.**

**No. 56A03–0911–CR–553.**

Court of Appeals of Indiana.

June 9, 2010.

Gregory F. Zoeller, Attorney General of Indiana, Kathy Bradley, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellant.

Douglas Haley, Miami Correctional Facility, Bunker Hill, IN, pro se.

## OPINION

CRONE, Judge.

### Case Summary

The Indiana Department of Correction ("DOC") appeals the denial of its motion to correct error, which challenged the trial court's order granting Douglas Haley's petition for educational credit time. We reverse.

### Issues

DOC raises two issues, which we restate as follows:

I. Whether the trial court erred in granting Haley's petition for educational credit time; and

II. Whether the Newton County Special Prosecutor has the statutory authority to represent DOC in this proceeding.

## Facts and Procedural History

In 2003, Haley received a twenty-four-year sentence for a class A felony dealing in cocaine conviction. While in prison, he completed the life skills program "Thinking for a Change." He also earned a bachelor's degree from Ball State University. He requested educational credit time for completing the life skills program from DOC but was denied. On April 3, 2009, Haley filed a motion for six months' educational credit time in the Newton Superior Court under his criminal cause number. DOC was not served with this motion.

On June 2, 2009, a hearing on Haley's motion was held. The Newton County Special Prosecutor appeared for the State. DOC did not appear. At the hearing, the trial court asked the special prosecutor whether DOC was a necessary party. Tr. at 9. The special prosecutor replied,

I would think so, but I guess we're the State.

. . . .

And we don't normally represent DOC. We do represent the Bureau of Motor Vehicles fairly often but I have never been called in as a prosecutor or deputy prosecutor, either one, to represent the Department of Corrections. I don't know of any language authorizing that. I think that's the Attorney General's purview, not ours. My other question is that the Defendant's evidence has lacked showing us what credit time that he has earned. . . . How are we to know without the DOC here with us how many credits he has received?

*Id.* at 9–10. At the conclusion of the hearing, the trial court took the matter under advisement.

On July 6, 2009, the trial court granted Haley's motion for educational credit time. On July 16, 2009, the Deputy Attorney General ("DAG") filed a motion to intervene on behalf of DOC. DOC also filed a motion to correct error, asserting that the trial court had misinterpreted the relevant statute and that Haley was not entitled to educational credit time. A hearing on DOC's motions was held on August 25, 2009, at which both the Newton County Special Prosecutor and the DAG appeared. The Newton County Special Prosecutor objected to the motion to intervene and argued that "the State of Indiana as represented by the Prosecuting Attorney is adequate to protect the interests of the DOC at the trial level." *Id.* at 28. On September 24, 2009, the trial court issued an order granting DOC's motion to intervene but denying its motion to correct error, which provided in pertinent part as follows:

The court notes that the Deputy Attorney General is requesting the granting of the Motion to Intervene and the State of Indiana represented by the Special Prosecutor in the case is objecting to the same, said Special Prosecutor believing that in the criminal case she has sufficient authority to represent the interests of the State of Indiana in regard to a criminal case in which a conviction against the petitioner was entered. At the original hearing, the Special Prosecutor consented to proceeding as the Special Prosecutor in the case and as representative for the Department of Correction. The Deputy Attorney General, in substance, is indicating that the Department of Correction is somehow different from the State of Indiana and the Special Prosecutor in this criminal case has lost the authority to represent the State of Indiana. . . . A transcript of the hearing on the Motion to Correct

Errors would focus on the divergent positions and the fact that the two different representatives of the State of Indiana are taking opposite positions. However, in order for this issue to potentially be addressed, the court now grants the Motion to Intervene, even though this court believes that the Department of Correction was and has continuously been represented by the Special Prosecutor.

Appellant's App. at 38. DOC appeals.

## Discussion and Decision

### I. Educational Credit Time

 DOC contends that the trial court erred in denying its motion to correct error, arguing that the trial court misinterpreted the applicable statute regarding Haley's motion for educational credit time. Generally, we review rulings on motions to correct error for an abuse of discretion. *Ind. Bureau of Motor Vehicles v. Charles*, 919 N.E.2d 114, 116 (Ind.Ct.App.2009);[1] *Supervised Estate of Williamson v. Williamson*, 798 N.E.2d 238, 241(Ind.Ct.App.2003). However, where there is a question of law, our standard of review is de novo. *Miller v. Ind. Dep't of Workforce Dev.*, 878 N.E.2d 346, 351 (Ind.Ct.App.2007); *Young v. Ind. Dep't of Natural Res.*, 789 N.E.2d 550, 554 (Ind.Ct.App.2003), *trans. denied.* In this case, the issue presented is one of statutory interpretation, and therefore our review of the trial court's ruling is de novo.

The primary goal in statutory construction is to determine, give effect to, and implement the legislature's intent. To effectuate legislative intent, we read the sections of an act together in order that no part is rendered meaningless if it can be harmonized with the remainder of the statute. The statute or regulation must be construed as a whole looking to its object and policy. Words and phrases are taken in their plain, ordinary, and usual meaning unless a different purpose is manifested by the statute. Further, we presume that the legislature intended logical application of the language used in the statute, so as to avoid unjust or absurd results.

*Dev. Servs. Alternatives, Inc. v. Ind. Family & Social Servs. Admin.*, 915 N.E.2d 169, 181 (Ind.Ct.App.2009) (citations and quotation marks omitted), *trans. denied* (2010).

An interpretation of a statute by an administrative agency charged with the duty of enforcing the statute is entitled to great weight, unless this interpretation would be inconsistent with the statute itself. .... Deference to an agency's interpretation of a statute becomes a consideration when a statute is ambiguous and susceptible of more than one reasonable interpretation. When a court is faced with two reasonable interpretations of a statute, one of which is supplied by an administrative agency charged with enforcing the statute, the court should defer to the agency.

*Pierce v. State Dep't. of Corr.*, 885 N.E.2d 77, 89 (Ind.Ct.App.2008) (citations and quotation marks omitted).

Educational credit time is governed by Indiana Code Section 35–50–6–3.3,[2] which provides in relevant part as follows:

(a) In addition to any credit time a person earns under subsection (b) or section 3 of this chapter, a person earns credit time if the person:

---

1. Haley asserts that *Charles* is a memorandum decision, but we note that publication was ordered on December 4, 2009. 919 N.E.2d at 114.

2. Amendments to Indiana Code Section 35–50–6–3.3 were approved by the legislature March 12, 2010. P.L. 42–2010. The amendments are irrelevant to our analysis.

(1) is in credit Class I;

(2) has demonstrated a pattern consistent with rehabilitation; and

(3) successfully completes requirements to obtain one (1) of the following:

(A) A general educational development (GED) diploma under IC 20–20–6, if the person has not previously obtained a high school diploma.

(B) A high school diploma, if·the person has not previously obtained a general educational development (GED) diploma.

(C) An associate's degree from an approved postsecondary educational institution (as defined under IC 21–7–13–6(a)).

(D) A bachelor's degree from an approved postsecondary educational institution (as defined under IC 21–7–13–6(a)).

(b) In addition to any credit time that a person earns under subsection (a) or section 3 of this chapter, a person may earn credit time if, while confined by the department of correction, the person:

(1) is in credit Class I;

(2) demonstrates a pattern consistent with rehabilitation; and

(3) successfully completes requirements to obtain at least one (1) of the following:

. . . .

(C) A certificate of completion of *a literacy and basic life skills program* approved by the department of correction.

. . . .

(c) The department of correction shall establish admissions criteria and other requirements for programs available for earning credit time under subsection (b). *A person may not earn credit time un-*

*der both subsections (a) and (b) for the same program of study.*

(d) The amount of credit time a person may earn under this section is the following:

. . . .

(4) Two (2) years for completion of a bachelor's degree.

. . . .

(7) Not more than a total of *six (6) months credit*, as determined by the department of correction, for the completion of one (1) or more *literacy and basic life skills programs* approved by the department of correction.

(Emphases added.)

Haley sought educational credit pursuant to 35–50–6–3.3(b). The source of the parties' dispute lies in subparagraph (b)(3)(C); namely, what constitutes an acceptable course of study that fulfills the "literacy and basic life skills program." The parties agree that the "Thinking for a Change" program satisfies the basic life skills component, but they do not agree regarding the literacy component. Haley asserts that his bachelor's degree satisfies the literacy component, and the trial court agreed. DOC contends that the literacy component is satisfied by the adult basic education programs offered in their facilities.

In support of its argument, DOC relies on Executive Directive # 04–32, adopted by the DOC on June 8, 2004, which provides in pertinent part,

This Executive Directive is in reference to Executive Directive # 03–55 and is to clarify and supersede that Executive Directive. Executive Directive # 03–55 presented the new Literacy and Life Skills program that was authorized by the General Assembly in 2003.

The objective of this legislation is to award up to six (6) months of credit time

to adult offenders sentenced to the Department and housed in the Department's adult facilities upon the successful completion of an approved literacy and basic life skills program. The rationale for this program is that in order to make a successful return to family, community and workplace[,] individuals who leave correctional facilities need an array of life skills. The basic literacy skills—reading, writing, and arithmetic—generally offered throughout the Department's facilities are important and the competency based vocational programs provide job skills. However, being literate and possessing job skills does not ensure a successful transition to independent living and a job. To obtain and keep a job, the person needs a number of social skills: he/she must know how to get along with peers; deal with supervisors and other authority figures; and provide timely, responsible, and consistent work performance. Skills in personal relationships are required to be an effective, socially useful citizen.

. . . .

Offenders must have completed both the approved Literacy and the approved Life Skills ("Thinking for a Change") portions of this program after July 1, 2003 in order to qualify for the six (6) months of credit time.

Appellant's App. at 17 (emphases in original removed).

DOC asserts that a "literacy" program is a term of art, with its origins in the Adult Education and Family Literacy Act of 1998 ("the Act"). The purpose of the Act is to "create a partnership among the Federal Government, States, and localities to provide, on a voluntary basis, adult education and literacy services." 20 U.S.C. § 9201. Pursuant to the Act, the "term 'literacy' means an individual's ability to read, write, and speak in English, compute, and solve problems, at levels of proficiency necessary to function on the job, in the family of the individual, and in society." 20 U.S.C. § 9202(12). According to DOC,

This is definitely not a description of a bachelor['s] degree, the educational level that has been achieved by Haley while in the DOC ... 'Literacy' refers to teaching a person how to read and do basic math so the person can function in society. 'Literacy' does not refer to improving upon or using skills already acquired and performing satisfactorily. Thus, college does not count as the literacy component[.]

Appellant's Br. at 9.

Haley argues that the meaning of literacy, although it does not describe a bachelor's degree, reflects the need for higher education. Haley's argument has merit, and moreover, we applaud him for seeking and attaining such a high level of education. However, our rules of statutory construction require that we read the statute as a whole. *See Pierce*, 885 N.E.2d at 89. Educational credit time for college degrees, both associate's and bachelor's, is governed by Indiana Code Section 35–50–6–3.3(a)(3)(D), and the amount of credit time that a person may earn for obtaining a bachelor's degree is two years. Ind. Code § 35–50–6–3.3(d)(4). In addition, Section 35–50–6–3.3(c) does not permit a person to earn credit time under both subsections (a) and (b) for the same program of study. Based on the foregoing, we cannot say that DOC's interpretation is inconsistent with the statute and must, therefore, defer to DOC's interpretation. We conclude that the trial court erred in granting Haley's motion for educational credit time based on his completion of the literacy and life skills program. That does not mean that Haley is ineligible for any

educational credit time, however. His bachelor's degree may entitle him to two years' education credit time. *See* Ind. Code § 35–50–6–3.3(a)(3)(D), (d)(4). We observe that nothing in the record shows whether he has already applied for and received such credit time.

### II. Representation of DOC Before the Trial Court

■■■ Although Haley does not specifically challenge the trial court's grant of DOC's motion to intervene, the parties present arguments regarding whether the special prosecutor has authority to represent DOC in this action, and the trial court granted the motion so that this issue could be addressed. We observe that "[t]he long-standing rule in Indiana has been that a case is deemed moot when no effective relief can be rendered to the parties before the court." *DeSalle v. Gentry,* 818 N.E.2d 40, 48–49 (Ind.Ct.App.2004). However, we may address the merits of a moot case if it involves "a question of great public importance which is likely to recur in a context which will continue to evade review." *Id.* at 49. We think this is such a case, and accordingly, we will address whether the special prosecutor has the authority to represent DOC in this action.

DOC argues that only the Indiana Attorney General has the statutory authority to represent state agencies, such as the DOC. The Office of the Attorney General is a statutory creature governed by Title 4, Article 6 of the Indiana Code. Indiana Code Section 4–6–1–6 provides,

> All of the rights, powers, and duties conferred by law upon the attorney-general are conferred upon the attorney-general created by this chapter; in addition thereto, the attorney-general shall consult with and advise the several pros-

ecuting attorneys of the state in relation to the duties of their office, and when, in his judgment, the interest of the public requires it, he shall attend the trial of any party accused of an offense, and assist in the prosecution; and *shall represent the state in any matter involving the rights or interests of the state, including actions in the name of the state, for which provision is not otherwise made by law.*

(Emphasis added.) Also, Indiana Code Section 4–6–2–1 reads, in pertinent part, "Such attorney-general shall prosecute and defend all suits that may be instituted by or against the state of Indiana, the prosecution and defense of which is not otherwise provided for by law[.]"

■■■ Title 33, Article 39 governs prosecuting attorneys. "While the office of Prosecuting Attorney may have been created by the Constitution of Indiana, the rights and duties of that office are prescribed by statute." *State v. Market,* 158 Ind.App. 192, 202, 302 N.E.2d 528, 533–34 (1973). Indiana Code Section 33–39–1–5 provides,

> Except as provided in IC 12–15–23–6(d),[3] the prosecuting attorneys, within their respective jurisdictions, shall:
>
> (1) conduct all prosecutions for felonies, misdemeanors, or infractions and all suits on forfeited recognizances;
>
> (2) superintend, on behalf of counties or any of the trust funds, all suits in which the counties or trust funds may be interested or involved; and
>
> (3) perform all other duties required by law.

Thus, the principal duty of the prosecuting attorney is to represent the state in criminal cases in the trial court.[4] "A person

---

**3.** Indiana Code Section 12–15–23–6 deals with improper Medicaid payments.

**4.** We observe that the right and duty to appeal criminal cases to this Court or our supreme

appointed to serve as a special prosecutor has the same powers as the prosecuting attorney of the county. However, the appointing judge shall limit scope of the special prosecutor's duties to include only the investigation or prosecution of a particular case or particular grand jury investigation." Ind.Code § 33–39–1–6(e).

As previously noted, Haley first sought educational credit time from DOC. DOC is the state body that administers the statutes governing educational credit time for inmates. *See Watkins v. State*, 869 N.E.2d 497, 500 (Ind.Ct.App.2007) ("[I]t is the DOC which administers the sentence and consequently the DOC which maintains the responsibility to deny or restore credit time."); *see also Samuels v. State*, 849 N.E.2d 689, 692 (Ind.Ct.App.2006), *trans. denied; Members v. State*, 851 N.E.2d 979, 983 (Ind.Ct.App.2006), *trans. denied.*

The action brought by Haley in the Newton Superior Court seeking educational credit time was based on DOC's denial of his request for educational credit. In other words, the basis of Haley's action is a dispute between an inmate and DOC. In essence, it is an action against the DOC.[5] A dispute as to whether an inmate is entitled to credit time is not a criminal manner, and Haley's action against DOC is not a criminal action. Indiana Code Sections 4–6–1–6 and 4–6–2–1 confer to the attorney general the authority to represent the DOC is such an action. The prosecuting attorney is not authorized by statute to represent the DOC in such an action.[6] *See* Ind.Code § 33–39–1–5.

In sum, we reverse the trial court's denial of DOC's motion to correct error.

Reversed.

BAKER, C.J., and DARDEN, J., concur.

court is the exclusive responsibility of the Attorney General; pursuant to Indiana Code Section 4–6–2–1, the prosecuting attorney does not have that right. *Market*, 158 Ind. App. at 203, 302 N.E.2d at 534.

5. As a practical matter, we note that the special prosecutor possessed insufficient information regarding Haley's educational credit time, as she herself acknowledged when she pointed out that she did not know how much educational credit time Haley had already earned. *See* Tr. at 10.

6. We observe that in cases involving the suspension of driving privileges, the Bureau of Motor Vehicles is represented by the prosecuting attorney. *See* Ind.Code § 9–30–6–10(e) ("The prosecuting attorney of the county in which a petition has been filed under this chapter shall represent the state on relation of the bureau with respect to the petition."). In addition, our opinion should not be read to limit the Attorney General's ability to designate the local prosecutor to represent the State in specific cases, as is often the case in petitions for restricted licenses.